# KIMMELMAN, ATTORNEY GENERAL OF NEW JERSEY, ET AL. *v.* MORRISON

No. 84–1661.   Argued March 5, 1986—Decided June 26, 1986

366

BRENNAN, J., delivered the opinion of the Court, in which WHITE, MARSHALL, BLACKMUN, STEVENS, and O'CONNOR, JJ., joined. POWELL, J., filed an opinion concurring in the judgment, in which BURGER, C. J., and REHNQUIST, J., joined, *post,* p. 391.

*Allan J. Nodes* argued the cause for petitioners. With him on the brief were *Irwin I. Kimmelman,* Attorney General of New Jersey, and *Catherine A. Foddai, Mildred Vallerini Spiller,* and *Arlene R. Weiss,* Deputy Attorneys General.

*William E. Staehle,* by appointment of the Court 474 U. S. 917, argued the cause and filed a brief for respondent.*

---

*\*Leon Friedman, Charles S. Sims,* and *Burt Neuborne* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging affirmance.

JUSTICE BRENNAN delivered the opinion of the Court.

The question we address in this case is whether the restrictions on federal habeas review of Fourth Amendment claims announced in *Stone* v. *Powell*, 428 U. S. 465 (1976), should be extended to Sixth Amendment claims of ineffective assistance of counsel where the principal allegation and manifestation of inadequate representation is counsel's failure to file a timely motion to suppress evidence allegedly obtained in violation of the Fourth Amendment.

## I

Respondent, Neil Morrison, was convicted by the State of New Jersey of raping a 15-year-old girl. The case presented by the State at respondent's bench trial consisted of scientific evidence and of the testimony of the victim, her mother, and the police officers who handled the victim's complaint.

The victim testified that Morrison, who was her employer, had taken her to his apartment, where he forced her onto his bed and raped her. Upon returning home, the girl related the incident to her mother, who, after first summoning Morrison and asking for his account of events, phoned the police. The police came to the victim's home and transported her to the hospital, where she was examined and tested for indicia of a sexual assault.

The State also called as a witness Detective Dolores Most, one of the officers who investigated the rape complaint. Most testified that she accompanied the victim to Morrison's apartment building a few hours after the rape. Morrison was not at home, but another tenant in the building let them into respondent's one-room apartment. While there, Most stated, she seized a sheet from respondent's bed.

At this point in the testimony respondent's counsel objected to the introduction of the sheet and to any testimony concerning it on the ground that Most had seized it without a search warrant. New Jersey Court Rules, however, require

that suppression motions be made within 30 days of indictment unless the time is enlarged by the trial court for good cause. N. J. Ct. Rule 3:5–7. Because the 30-day deadline had long since expired, the trial judge ruled that counsel's motion was late. Defense counsel explained to the court that he had not heard of the seizure until the day before, when trial began, and that his client could not have known of it because the police had not left a receipt for the sheet. The prosecutor responded that defense counsel, who had been on the case from the beginning, had never asked for *any* discovery. Had trial counsel done so, the prosecutor observed, police reports would have revealed the search and seizure. The prosecutor stated further that one month before trial he had sent defense counsel a copy of the laboratory report concerning the tests conducted on stains and hairs found on the sheets.

Asked repeatedly by the trial court why he had not conducted any discovery, respondent's attorney asserted that it was the State's obligation to inform him of its case against his client, even though he made no request for discovery. The judge rejected this assertion and stated: "I hate to say it, but I have to say it, that you were remiss. I think this evidence was there and available to you for examination and inquiry." 2 Tr. 114. Defense counsel then attempted to justify his omission on the ground that he had not expected to go to trial because he had been told that the victim did not wish to proceed. The judge rejected this justification also, reminding counsel that once an indictment is handed down, the decision to go through with the complaint no longer belongs to the victim, and that it requires a court order to dismiss an indictment. *Id.*, at 115. While the judge agreed that defense counsel had "br[ought] about a very valid basis . . . for suppression . . . if the motion had been brought and timely made," he refused "to entertain a motion to suppress in the middle of the trial." *Id.*, at 110.

The State then called a number of expert witnesses who had conducted laboratory tests on the stains and hairs found on the sheet, on a stain found on the victim's underpants, and on blood and hair samples provided by the victim and respondent. This testimony established that the bedsheet had been stained with semen from a man with type O blood, that the stains on the victim's underwear similarly exhibited semen from a man with type O blood, that the defendant had type O blood, that vaginal tests performed on the girl at the hospital demonstrated the presence of sperm, and that hairs recovered from the sheet were morphologically similar to head hair of both Morrison and the victim. Defense counsel aggressively cross-examined all of the expert witnesses.

The defense called four friends and acquaintances of the defendant and the defendant himself in an attempt to establish a different version of the facts. The defense theory was that the girl and her mother fabricated the rape in order to punish respondent for being delinquent with the girl's wages. According to Morrison, the girl and her mother had not intended to go through with the prosecution, but ultimately they found it impossible to extricate themselves from their lies. Morrison admitted that he had taken the girl to his apartment, but denied having had intercourse with her. He claimed that his sexual activity with other women accounted for the stains on his sheet, and that a hair from the girl's head was on his sheet because she had seated herself on his bed. Defense counsel also implied that the girl's underwear and vaginal secretions tested positive for semen and sperm because she probably had recently engaged in relations with the father of her baby. Counsel did not, however, call the girl's boyfriend to testify or have him tested for blood type, an omission upon which the prosecution commented in closing argument.

The trial judge, in rendering his verdict, noted: "As in most cases nothing is cut and dry. There are discrepancies in the State's case, there are discrepancies in the defense as

it's presented." 6 Tr. 86. After pointing out some of the more troublesome inconsistencies in the testimony of several of the witnesses, the judge declared his conclusion that the State had proved its case beyond a reasonable doubt.

After trial, respondent dismissed his attorney and retained new counsel for his appeal. On appeal, respondent alleged ineffective assistance of counsel and error in the trial court's refusal to entertain the suppression motion during trial. The appeals court announced summarily that it found no merit in either claim and affirmed respondent's conviction. The Supreme Court of New Jersey subsequently denied respondent's petition for discretionary review. Respondent then sought postconviction relief in the New Jersey Superior Court, from the same judge who had tried his case. There Morrison presented the identical issues he had raised on direct appeal. The court denied relief on the ground that it was bound by the appellate court's resolution of those issues against respondent.

Respondent then sought a writ of habeas corpus in Federal District Court, again raising claims of ineffective assistance of counsel and erroneous admission of illegally seized evidence. The District Court ruled that because respondent did not allege that the State had denied him an opportunity to litigate his Fourth Amendment claim fully and fairly, direct consideration of this claim on federal habeas review was barred by *Stone* v. *Powell*, 428 U. S. 465 (1976). 579 F. Supp. 796 (NJ 1984). The District Court did find respondent's ineffective-assistance claim meritorious.

Because the District Court rendered its decision before this Court announced the standards to be applied to claims of constitutionally deficient representation in *Strickland* v. *Washington*, 466 U. S. 668 (1984), the District Court relied on Third Circuit precedent for guidance, particularly *United States* v. *Baynes*, 687 F. 2d 659 (1982), and *Moore* v. *United States*, 432 F. 2d 730 (1970). Like *Strickland*, these cases required a two-pronged inquiry into counsel's competence and

into the prejudicial effect of counsel's unprofessional errors. With respect to trial counsel's competence, the District Court used as its standard the "'customary skill and knowledge which normally prevails at the time and place.'" 579 F. Supp., at 802 (quoting *Moore, supra,* at 736). Noting that this standard "'entails a careful inquiry into the particular circumstances surrounding each case,'" 579 F. Supp., at 802 (quoting *Baynes, supra,* at 665), the court concluded:

"[C]ounsel failed to conduct any meaningful pretrial discovery, and thus was totally unaware that certain damaging evidence might have been the appropriate subject for a suppression motion. Counsel seems to have acted on the misapprehension that the State was obligated to turn over anything that the defense might be interested in examining. Little else was offered by way of excuse by [Morrison's] lawyer in the face of repeated criticism by the state trial judge, except for counsel's rather remarkable attempt to justify his conduct by noting that up until trial he had been told that the victim 'didn't want to go ahead with this case.' . . . Based on the unmitigated negligence of petitioner's trial counsel in failing to conduct any discovery, combined with the likelihood of success of a suppression motion had it been timely made, we find that petitioner was deprived of effective representation." 579 F. Supp., at 802–803.

The District Court then determined that, measured by the harmless-beyond-a-reasonable-doubt standard prescribed by *Baynes, supra,* respondent had been prejudiced by counsel's ineffectiveness and issued a conditional writ of habeas corpus ordering Morrison's release unless New Jersey should retry him.

Although the District Court did not address the relevance of *Stone, supra,* to respondent's Sixth Amendment ineffective-assistance-of-counsel claim, the Court of Appeals did. Relying on both the language of *Stone* and the different natures of Fourth and Sixth Amendment claims, the Court of

Appeals concluded that *Stone* should not be extended to bar federal habeas consideration of Sixth Amendment claims based on counsel's alleged failure competently to litigate Fourth Amendment claims. 752 F. 2d 918 (1985). Because *Strickland* had recently been decided by this Court, the Court of Appeals reviewed the District Court's determination of ineffective assistance under *Strickland*'s test. The Court of Appeals determined that respondent's trial counsel had been "grossly ineffective," 752 F. 2d, at 922, but vacated and remanded for the District Court to consider whether, under the standards set forth in *Strickland, supra,* respondent had been prejudiced by his attorney's incompetence.

Petitioners, the Attorney General of New Jersey and the Superintendent of Rahway State Prison, petitioned for certiorari. We granted their petition, 474 U. S. 815 (1985), and now affirm.

## II

Petitioners urge that the Sixth Amendment veil be lifted from respondent's habeas petition to reveal what petitioners argue it really is — an attempt to litigate his defaulted Fourth Amendment claim. They argue that because respondent's claim is in fact, if not in form, a Fourth Amendment one, *Stone* directly controls here. Alternatively, petitioners maintain that even if Morrison's Sixth Amendment claim may legitimately be considered distinct from his defaulted Fourth Amendment claim, the rationale and purposes of *Stone* are fully applicable to ineffective-assistance claims where the principal allegation of inadequate representation is counsel's failure to file a timely motion to suppress evidence allegedly obtained in violation of the Fourth Amendment. *Stone*, they argue, will be emasculated unless we extend its bar against federal habeas review to this sort of Sixth Amendment claim. Finally, petitioners maintain that consideration of defaulted Fourth Amendment claims in Sixth Amendment federal collateral proceedings would violate principles of comity and

federalism and would seriously interfere with the State's interest in the finality of its criminal convictions.[1]

## A

We do not share petitioners' perception of the identity between respondent's Fourth and Sixth Amendment claims. While defense counsel's failure to make a timely suppression motion is the primary manifestation of incompetence and source of prejudice advanced by respondent, the two claims are nonetheless distinct, both in nature and in the requisite elements of proof.

Although it is frequently invoked in criminal trials, the Fourth Amendment is not a trial right; the protection it affords against governmental intrusion into one's home and affairs pertains to all citizens. The gravamen of a Fourth Amendment claim is that the complainant's legitimate expectation of privacy has been violated by an illegal search or seizure. See, *e. g.*, *Katz* v. *United States*, 389 U. S. 347 (1967). In order to prevail, the complainant need prove only that the search or seizure was illegal and that it violated his reasonable expectation of privacy in the item or place at issue. See, *e. g.*, *Rawlings* v. *Kentucky*, 448 U. S. 98, 104 (1980).

The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process. *E. g.*, *Gideon* v. *Wainwright*, 372 U. S. 335, 344 (1963). The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. See, *e. g.*, *Strickland* v. *Washington*, 466 U. S., at 686; *United States* v. *Cronic*, 466 U. S. 648,

---

[1] Petitioners also argue that because respondent's Fourth Amendment claim was procedurally defaulted by his trial lawyer's failure to file a timely suppression motion, any Sixth Amendment claim based on this failure is similarly defaulted. We disagree. Respondent's Sixth Amendment claim is distinct from his Fourth Amendment claim and has never been defaulted.

655–657 (1984). In order to prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, *Strickland,* 466 U. S., at 688, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.,* at 694. Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. Thus, while respondent's defaulted Fourth Amendment claim is one element of proof of his Sixth Amendment claim, the two claims have separate identities and reflect different constitutional values.

B

We also disagree with petitioners' contention that the reasoning and purposes of *Stone* are fully applicable to a Sixth Amendment claim which is based principally on defense counsel's failure to litigate a Fourth Amendment claim competently.

At issue in *Stone* was the proper scope of federal collateral protection of criminal defendants' right to have evidence, seized in violation of the Fourth Amendment, excluded at trial in state court. In determining that federal courts should withhold habeas review where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Court found it crucial that the remedy for Fourth Amendment violations provided by the exclusionary rule "is not a personal constitutional right." 428 U. S., at 486; see also *id.,* at 495, n. 37. The Court expressed the understanding that the rule "is not calculated to redress the injury to the privacy of the victim of the search or seizure," *id.,* at 486; instead, the Court explained, the exclusionary rule is predominately a " 'judicially created' " structural rem-

edy "'designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" *Ibid.* (quoting *United States* v. *Calandra,* 414 U. S. 338, 348 (1974)).

The Court further noted that "[a]s in the case of any remedial device, 'the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served,'" 428 U. S., at 486–487 (quoting *Calandra, supra,* at 348), and that the rule has not been extended to situations such as grand jury proceedings, 428 U. S., at 486–487, (citing *Calandra, supra*), and impeachment of a defendant who testifies broadly in his own behalf, 428 U. S., at 488 (citing *Walder* v. *United States,* 347 U. S. 62 (1954)), where the rule's costs would outweigh its utility as a deterrent to police misconduct. Applying this "pragmatic analysis," 428 U. S., at 488, to the question whether prisoners who have been afforded a full and fair opportunity in state court to invoke the exclusionary rule may raise their Fourth Amendment claims on federal habeas review, the Court determined that they may not. While accepting that the exclusionary rule's deterrent effect outweighs its costs when enforced at trial and on direct appeal, the Court found any "additional contribution . . . of the consideration of search-and-seizure claims . . . on collateral review," *id.,* at 493, to be too small in relation to the costs to justify federal habeas review. *Id.,* at 492–495.

In *Stone* the Court also made clear that its "decision . . . [was] *not* concerned with the scope of the habeas corpus statute as authority for litigating constitutional claims generally." *Id.,* at 495, n. 37 (emphasis in original). Rather, the Court simply "reaffirm[ed] that the exclusionary rule is a judicially created remedy rather than a personal constitutional right . . . and . . . emphasiz[ed] the minimal utility of the rule" in the context of federal collateral proceedings. *Ibid.* See also *Rose* v. *Mitchell,* 443 U. S. 545, 560 (1979) ("In *Stone* v. *Powell* . . . the Court carefully limited the reach of its opinion . . . to cases involving the judicially created exclu-

sionary rule, which had minimal utility when applied in a habeas corpus proceeding"); *Jackson* v. *Virginia*, 443 U. S. 307, 323 (1979) (declining to extend *Stone* to claims by state prisoners that, in violation of the constitutional standard set forth in *In re Winship*, 397 U. S. 358 (1970), the evidence in support of their convictions was not sufficient to permit a rational trier of fact to find guilt beyond a reasonable doubt).

In contrast to the habeas petitioner in *Stone*, who sought merely to avail himself of the exclusionary rule, Morrison seeks direct federal habeas protection of his personal right to effective assistance of counsel.

The right of an accused to counsel is beyond question a fundamental right. See, *e. g.*, *Gideon*, 372 U. S., at 344 ("The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours"). Without counsel the right to a fair trial itself would be of little consequence, see, *e. g.*, *Cronic*, *supra*, at 653; *United States* v. *Ash*, 413 U. S. 300, 307–308 (1973); *Argersinger* v. *Hamlin*, 407 U. S. 25, 31–32 (1972); *Gideon*, *supra*, at 343–345; *Johnson* v. *Zerbst*, 304 U. S. 458, 462–463 (1938); *Powell* v. *Alabama*, 287 U. S. 45, 68–69 (1932), for it is through counsel that the accused secures his other rights. *Maine* v. *Moulton*, 474 U. S. 159, 168–170 (1985); *Cronic*, *supra*, at 653; see also, Schaefer, Federalism and State Criminal Procedure, 70 Harv. L. Rev. 1, 8 (1956) ("Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have"). The constitutional guarantee of counsel, however, "cannot be satisfied by mere formal appointment," *Avery* v. *Alabama*, 308 U. S. 444, 446 (1940). "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Strickland*, *supra*, at 685. In other words, the right to counsel is the right to effective assistance of counsel. *Evitts* v. *Lucey*, 469 U. S. 387, 395–396 (1985); *Strickland*, *supra*, at

686; *Cronic,* 466 U. S., at 654; *Cuyler* v. *Sullivan,* 446 U. S. 335, 344 (1980); *McMann* v. *Richardson,* 397 U. S. 759, 771, n. 14 (1970).[2]

Because collateral review will frequently be the only means through which an accused can effectuate the right to counsel, restricting the litigation of some Sixth Amendment claims to trial and direct review would seriously interfere with an accused's right to effective representation. A layman will ordinarily be unable to recognize counsel's errors and to evaluate counsel's professional performance, cf. *Powell* v. *Alabama, supra,* at 69; consequently a criminal defendant will rarely know that he has not been represented competently until after trial or appeal, usually when he consults another lawyer about his case. Indeed, an accused will often not realize that he has a meritorious ineffectiveness claim until he begins collateral review proceedings, particularly if he retained trial counsel on direct appeal. Were we to extend *Stone* and hold that criminal defendants may not raise ineffective-assistance claims that are based primarily on incompetent handling of Fourth Amendment issues on federal habeas, we would deny most defendants whose trial attorneys performed incompetently in this regard the opportunity to vindicate their right to effective trial counsel. We would deny all defendants whose appellate counsel performed inadequately with respect to Fourth Amendment issues the opportunity to protect their right to effective appellate counsel. See *Evitts, supra.* Thus, we cannot say, as the Court was able to say in *Stone,* that restriction of federal habeas review would not severely interfere with the protection of the constitutional right asserted by the habeas petitioner.[3]

---

[2] As we held only last Term, the right to effective assistance of counsel is not confined to trial, but extends also to the first appeal as of right. *Evitts* v. *Lucey,* 469 U. S. 387 (1985).

[3] Moreover, the restriction on federal habeas relief established by *Stone* v. *Powell* was predicated on the existence at trial and on direct review of "an opportunity for full and fair litigation" of the constitutional claim ad-

Furthermore, while the Court may be free, under its analysis in *Stone,* to refuse for reasons of prudence and comity[4] to burden the State with the costs of the exclusionary rule in contexts where the Court believes the price of the rule to exceed its utility, the Constitution constrains our ability to allocate as we see fit the costs of ineffective assistance. The Sixth Amendment mandates that the State bear the risk of constitutionally deficient assistance of counsel. See *Murray* v. *Carrier, post,* at 488 (where a "procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State"); *Cuyler, supra,* at 344 ("The right to counsel prevents the States from conducting trials at which persons who face incarceration must defend themselves without adequate legal assistance"); see also *Evitts, supra,* at 396 ("The constitutional mandate is addressed to the action of the State").

We also reject the suggestion that criminal defendants should not be allowed to vindicate through federal habeas review their right to effective assistance of counsel where counsel's primary error is failure to make a timely request for the exclusion of illegally seized evidence—evidence which is "typically reliable and often the most probative information bearing on the guilt or innocence of the defendant." *Stone,* 428 U. S., at 490. While we have recognized that the "'premise of our adversary system of criminal justice . . . that partisan advocacy . . . will best promote the ultimate objective that the guilty be convicted and the innocent go

___

vanced by the habeas petitioner. 428 U. S. 465, 494 (1976). In general, no comparable, meaningful opportunity exists for the full and fair litigation of a habeas petitioner's ineffective-assistance claims at trial and on direct review.

[4] The Court made clear in *Stone* that it rested its holding on prudential, rather than jurisdictional, grounds. *Id.,* at 495, n. 37 ("Our decision does not mean that the federal court lacks jurisdiction over . . . [a Fourth Amendment] claim, but only that the application of the [exclusionary] rule is limited").

free,'" *Evitts*, 469 U. S., at 394, quoting *Herring* v. *New York*, 422 U. S. 853, 862 (1975), underlies and gives meaning to the right to effective assistance, *Cronic, supra*, at 655–656, we have never intimated that the right to counsel is conditioned upon actual innocence. The constitutional rights of criminal defendants are granted to the innocent and the guilty alike. Consequently, we decline to hold either that the guarantee of effective assistance of counsel belongs solely to the innocent or that it attaches only to matters affecting the determination of actual guilt.[5] Furthermore, petitioners do not suggest that an ineffective-assistance claim asserted on direct review would fail for want of actual prejudice whenever counsel's primary error is failure to make a meritorious objection to the admission of reliable evidence the exclusion of which might have affected the outcome of the proceeding. We decline to hold that the scope of the right to effective assistance of counsel is altered in this manner simply because the right is asserted on federal habeas review rather than on direct review.

C

*Stone's* restriction on federal habeas review, petitioners warn, will be stripped of all practical effect unless we extend it to Sixth Amendment claims based principally on defense counsel's incompetent handling of Fourth Amendment issues. Petitioners predict that every Fourth Amendment claim that fails or is defaulted in state court will be fully litigated in federal habeas proceedings in Sixth Amendment guise and that, as a result, many state-court judgments will be disturbed.

---

[5] As we observed in *Powell* v. *Alabama*, 287 U. S. 45 (1932), the layman defendant "requires the guiding hand of counsel at *every* step in the proceedings against him." *Id.*, at 69 (emphasis added). We noted:

"If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one." *Ibid.*

They seem to believe that a prisoner need only allege ineffective assistance, and if he has an underlying, meritorious Fourth Amendment claim, the writ will issue and the State will be obligated to retry him without the challenged evidence. Because it ignores the rigorous standard which *Strickland* erected for ineffective-assistance claims, petitioners' forecast is simply incorrect.

In order to establish ineffective representation, the defendant must prove both incompetence and prejudice.[6] 466 U. S., at 688. There is a strong presumption that counsel's performance falls within the "wide range of professional assistance," *id.*, at 689; the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.*, at 688–689. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.*, at 689. The defendant shows that he was prejudiced by his attorney's ineffectiveness by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694. See also, *id.*, at 695 (Where a defendant challenges his conviction, he must show that there exists "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt"). And, in determining the existence *vel non* of prejudice, the court "must consider the totality of the evidence before the judge or jury." *Ibid.*

---

[6] We refer here only to cases in which the defendant alleges "actual" ineffective assistance rather than the few contexts where ineffective assistance is "presumed," such as where counsel is either totally absent or prevented from assisting the accused during a critical stage of the proceeding, see, *e. g.*, *United States* v. *Cronic,* 466 U. S. 648, 659, n. 25 (1984); *Strickland,* 466 U. S., at 692, and where counsel is burdened by an actual conflict of interest. *Ibid.; Cuyler* v. *Sullivan,* 446 U. S. 335, 345–350 (1980).

As is obvious, *Strickland*'s standard, although by no means insurmountable, is highly demanding. More importantly, it differs significantly from the elements of proof applicable to a straightforward Fourth Amendment claim. Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim like respondent's, a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence.[7]

## D

In summary, we reject petitioners' argument that *Stone*'s restriction on federal habeas review of Fourth Amendment

---

[7] We have no reason to believe that defense attorneys will "sandbag"—that is, consciously default or poorly litigate their clients' Fourth Amendment claims in state court in the hope of gaining more favorable review of these claims in Sixth Amendment federal habeas proceedings. First, it is virtually inconceivable that an attorney would deliberately invite the judgment that his performance was constitutionally deficient in order to win federal collateral review for his client. Second, counsel's client has little, if anything, to gain and everything to lose through such a strategy. It should be remembered that the only incompetently litigated and defaulted Fourth Amendment claims that could lead to a reversal of the defendant's conviction on Sixth Amendment grounds are potentially outcome-determinative claims. No reasonable lawyer would forgo competent litigation of meritorious, possibly decisive claims on the remote chance that his deliberate dereliction might ultimately result in federal habeas review. Furthermore, when an attorney chooses to default a Fourth Amendment claim, he also loses the opportunity to obtain direct review under the harmless-error standard of *Chapman* v. *California*, 386 U. S. 18 (1967), which requires the State to prove that the defendant was not prejudiced by the error. By defaulting, counsel shifts the burden to the defendant to prove that there exists a reasonable probability that, absent his attorney's incompetence, he would not have been convicted. Cf. Comment, Effective Assistance of Counsel: The Sixth Amendment and the Fair Trial Guarantee, 50 U. Chi. L. Rev. 1380, 1428, n. 223 (1983).

claims should be extended to Sixth Amendment ineffective-assistance-of-counsel claims which are founded primarily on incompetent representation with respect to a Fourth Amendment issue. Where a State obtains a criminal conviction in a trial in which the accused is deprived of the effective assistance of counsel, the "State . . . unconstitutionally deprives the defendant of his liberty." *Cuyler,* 446 U. S., at 343. The defendant is thus "in custody in violation of the Constitution," 28 U. S. C. § 2254(a), and federal courts have habeas jurisdiction over his claim. We hold that federal courts may grant habeas relief in appropriate cases, regardless of the nature of the underlying attorney error.

## III

Petitioners also argue that respondent has not satisfied either the performance or the prejudice prong of the test for ineffective assistance of counsel set forth in *Strickland.* We address each component of that test in turn.

## A

With respect to the performance component of the *Strickland* test, petitioners contend that Morrison has not overcome the strong presumption of attorney competence established by *Strickland.* While acknowledging that this Court has said that a single, serious error may support a claim of ineffective assistance of counsel, Brief for Petitioners 33, n. 16 (citing *Cronic,* 466 U. S., at 657, n. 20),[8] petitioners argue that the mere failure to file a timely suppression motion alone does not constitute a *per se* Sixth Amendment violation. They maintain that the record "amply reflects that trial counsel crafted a sound trial strategy" and that, "[v]iewed in its entirety, counsel's pretrial investigation,

---

[8] See also *Smith* v. *Murray, post,* at 535; *Murray* v. *Carrier, post,* at 488.

preparation and trial performance were professionally reasonable." Brief for Petitioners 33 (footnotes and citations omitted). While we agree with petitioners' view that the failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel, we disagree with petitioners' assessment of counsel's performance.

In *Strickland* we explained that "access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." 466 U. S., at 685 (quoting *Adams* v. *United States ex rel. McCann,* 317 U. S. 269, 275, 276 (1942)). "Counsel . . . has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." 466 U. S., at 688. Counsel's competence, however, is presumed, *id.,* at 689, and the defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.,* at 688–689. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.,* at 689. In making the competency determination, the court "should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id.,* at 690. Because that testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies, we noted that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.,* at 691. But, we observed, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Ibid.*

The trial record in this case clearly reveals that Morrison's attorney failed to file a timely suppression motion, not due to strategic considerations, but because, until the first day of trial, he was unaware of the search and of the State's intention to introduce the bedsheet into evidence. Counsel was unapprised of the search and seizure because he had conducted no pretrial discovery. Counsel's failure to request discovery, again, was not based on "strategy," but on counsel's mistaken beliefs that the State was obliged to take the initiative and turn over all of its inculpatory evidence to the defense and that the victim's preferences would determine whether the State proceeded to trial after an indictment had been returned.

Viewing counsel's failure to conduct any discovery from his perspective at the time he decided to forgo that stage of pretrial preparation and applying a "heavy measure of deference," *ibid.*, to his judgment, we find counsel's decision unreasonable, that is, contrary to prevailing professional norms. The justifications Morrison's attorney offered for his omission betray a startling ignorance of the law—or a weak attempt to shift blame for inadequate preparation. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Ibid.* Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate, the State's case through discovery. Such a complete lack of pretrial preparation puts at risk both the defendant's right to an "'ample opportunity to meet the case of the prosecution,'" *id.*, at 685 (quoting *Adams, supra,* at 275), and the reliability of the adversarial testing process. See 466 U. S., at 688.

Petitioners attempt to minimize the seriousness of counsel's errors by asserting that the State's case turned far more on the credibility of witnesses than on the bedsheet and related testimony. Consequently, they urge, defense counsel's vigorous cross-examination, attempts to discredit witnesses, and effort to establish a different version of the facts

lift counsel's performance back into the realm of professional acceptability.

*Strickland* requires a reviewing court to "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*, at 690. It will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the "identified acts or omissions" overcome the presumption that counsel rendered reasonable professional assistance. Since "[t]here are countless ways to provide effective assistance in any given case," *id.*, at 689, unless consideration is given to counsel's overall performance, before and at trial, it will be "all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Ibid.*

In this case, however, we deal with a total failure to conduct pretrial discovery, and one as to which counsel offered only implausible explanations. Counsel's performance at trial, while generally creditable enough, suggests no better explanation for this apparent and pervasive failure to "make reasonable·investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.*, at 691. Under these circumstances, although the failure of the District Court and the Court of Appeals to examine counsel's overall performance was inadvisable, we think this omission did not affect the soundness of the conclusion both courts reached—that counsel's performance fell below the level of reasonable professional assistance in the respects alleged.

Moreover, petitioners' analysis is flawed, however, by their use of hindsight to evaluate the relative importance of various components of the State's case. See, *id.*, at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged con-

duct, and to evaluate the conduct from counsel's perspective at the time"). At the time Morrison's lawyer decided not to request any discovery, he did not—and, because he did not ask, could not—know what the State's case would be. While the relative importance of witness credibility vis-à-vis the bedsheet and related expert testimony is pertinent to the determination whether respondent was prejudiced by his attorney's incompetence, it sheds no light on the reasonableness of counsel's decision not to request any discovery. We therefore agree with the District Court and the Court of Appeals that the assistance rendered respondent by his trial counsel was constitutionally deficient.

## B

### 1

Petitioners also argue that respondent suffered no prejudice from his attorney's failure to make a timely suppression motion and that the Third Circuit erred in remanding the case to the District Court for a determination of prejudice under *Strickland*'s standard. The essence of petitioners' argument is that, at a post-trial hearing on respondent's motion for bail pending appeal, the same judge who presided at respondent's trial made a finding of historical fact, which is entitled to a presumption of correctness under 28 U. S. C. § 2254(d). If that finding were presumed correct, petitioners contend that it would be dispositive of the prejudice issue— that is, no court could find that there exists "a reasonable probability that, absent [Morrison's attorney's] errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U. S., at 695. Thus, petitioners conclude, no ground for a remand exists.

In New Jersey, bail after conviction is appropriate where a substantial issue for review exists and where the defendant poses no threat to the community. N. J. Ct. Rule 2:9–4. At Morrison's bail hearing, the public defender representing him informed the judge that because he had not read the trial

transcript and was not doing the appeal, he was not entirely sure on what grounds Morrison would appeal. Tr. of Motion for Bail Pending Appeal 7. He did, however, argue that the trial court had committed two legal errors that could present substantial issues for appellate review. Specifically, counsel contended that the court erred in refusing to entertain the midtrial motion to suppress the sheet and that respondent may have been prejudiced by the court's awareness of another pending indictment.

With respect to the court's decision to admit the sheet, Morrison's attorney presented what is most accurately characterized as an abuse-of-discretion argument. He suggested that because trial counsel had been surprised by the introduction of the sheet, the court should have waived the pretrial filing requirement for suppression motions and should have permitted the midtrial motion. *Id.*, at 5. The judge responded to this argument by noting:

> "The matter of the sheet and the tests that resulted therefrom obviously were important, they were not the most important phases of this case by any means.
>
> "Obviously, the most important phases of the case were direct testimony from the victim herself as well as from testimony of witnesses, police, medical examinations, and testimony from the defense, testimony by the defendant. The sheet was just one small phase in this whole case. I do not think that it is such a substantial issue for review by the Appellate Division which would cause or be likely to cause a reversal." *Id.*, at 11.

Petitioners direct our attention to the court's statement that "[t]he sheet was just one small phase in this whole case." *Ibid.* While acknowledging this Court's explanation in *Strickland* that both the performance and the prejudice components of the ineffectiveness test are mixed questions of fact and law and that therefore a state court's ultimate conclusions regarding competence and prejudice are not findings of fact binding on the federal court to the extent stated by

§ 2254(d), see *Strickland*, 466 U. S., at 698, petitioners maintain that this statement constitutes a subsidiary finding of historical fact, entitled to § 2254(d)'s presumption of correctness. See *ibid.* Further, petitioners construe the judge's remark to be a finding that even if the sheet had been excluded, he would have found respondent guilty. So construed and accorded the presumption of correctness, this finding of fact, they argue, prevents a federal court from determining that Morrison was prejudiced by his attorney's incompetence.

We do not agree with petitioners that the statement made by the judge at respondent's bail hearing constitutes a finding of fact which is subject to § 2254(d) deference in this case. Section 2254(d)(1) provides that "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction . . . shall be presumed to be correct" unless "the merits of the factual dispute were not resolved in the State court hearing."[9] The issue respondent places before the federal habeas courts is substantially different from the issue he presented to the judge in the bail hearing. The question before the federal courts is whether a reasonable probability exists that the trial judge would have had a reasonable doubt concerning respondent's guilt if the sheet and related testimony had been excluded. By contrast, the state court was called upon simply to decide whether the argument that the court had abused its discretion in refusing to entertain respondent's suppression motion midtrial raised a substantial issue for appeal on which Morrison was likely to succeed.

Not only was the judge not asked to answer the question presently before the federal courts, he did not answer it. He stated only that while the sheet was an important aspect of

---

[9] Subsections (2)–(8) of 28 U. S. C. § 2254(d) establish other exceptions to the general rule that determinations made by a state court after a hearing on the merits of a factual issue are entitled to a presumption of correctness.

the case, it was not the most important aspect. We do not find his remark tantamount to a declaration that he would have found respondent guilty even if the sheet and related expert testimony had not been admitted. If, after saying what he did, the judge had been asked whether he would have had a reasonable doubt concerning Morrison's guilt had the sheet and related testimony been excluded, he could well have answered affirmatively without contradicting his earlier comment. Although the sheet may not have been as important as other components of the State's case, it may have tipped the balance. We simply do not know.

Because it cannot fairly be said that the "merits of the factual dispute," § 2254(d)(1), regarding the existence of prejudice were resolved in the bail hearing, we conclude that the statements of the judge regarding the relative importance of the sheet are not findings of fact subject to § 2254(d) deference.[10]

2

Respondent also criticizes the Court of Appeals' decision to remand for redetermination of prejudice. He argues that the record is sufficiently complete to enable this Court to apply *Strickland*'s prejudice prong directly to the facts of his case and urges that we do so.

We decline respondent's invitation. While the existing record proved adequate for our application of *Strickland*'s competency standard, it is incomplete with respect to prejudice. No evidentiary hearing has ever been held on the merits of respondent's Fourth Amendment claim. Because the State has not conceded the illegality of the search and seizure, Tr. of Oral Arg. 11–12, it is entitled to an opportunity to establish that Officer Most's search came within one of the exceptions we have recognized to the Fourth Amendment's

---

[10] We do not mean to suggest that the comment made by the judge at the bail hearing has absolutely no relevance to the prejudice inquiry; we hold only that his remark is not a finding of fact subject to § 2254(d)'s presumption of correctness.

prohibition against warrantless searches. Even if not, respondent may be unable to show that absent the evidence concerning the bedsheet there is a reasonable probability that the trial judge would have had a reasonable doubt as to his guilt. If respondent could not make this showing, a matter on which we express no view, there would of course be no need to hold an evidentiary hearing on his Fourth Amendment claim.

The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE POWELL, with whom THE CHIEF JUSTICE and JUSTICE REHNQUIST join, concurring in the judgment.

I agree that *Stone* v. *Powell*, 428 U. S. 465 (1976), does not bar consideration of respondent's ineffective-assistance-of-counsel claim on federal habeas corpus. That conclusion flows logically from *Stone* and from *Strickland* v. *Washington*, 466 U. S. 668 (1984). The more difficult question is whether the admission of illegally seized but reliable evidence can ever constitute "prejudice" under *Strickland*. There is a strong argument that it cannot. But that argument has neither been raised by the parties nor discussed by the various courts involved in this case. Consequently, the proper course is to reject petitioners' *Stone* v. *Powell* argument and go no further. Though the Court appears to take this course, it employs unnecessarily broad language that may suggest that we have considered and resolved the broader *Strickland* issue in this case. *E. g., ante,* at 379–380. I write separately because that suggestion is mistaken, and also to express my view of the relationship between *Stone* and the Sixth Amendment right to the effective assistance of counsel.

I

Respondent's ineffective-assistance claim is uncomplicated. Respondent argues that his trial counsel incompetently failed to conduct any pretrial discovery. Had counsel conducted discovery, he would have known that the police had seized a

bedsheet from respondent's apartment without a warrant. The bedsheet contained hair samples matching hair of both respondent and the rape victim. The sheet also contained semen stains matching those found in the victim's underpants. The State introduced the bedsheet and accompanying expert analysis at trial, and the trial judge denied respondent's belated motion to suppress on the ground that it was untimely. Respondent contends that the sheet would have been excluded on Fourth Amendment grounds had the suppression motion been timely filed. Thus, respondent argues, counsel's failure to conduct discovery led to the admission of evidence that was both damning and excludible.

Petitioners, the Attorney General of New Jersey and the Superintendent of Rahway State Prison, argue that because this claim depends on a violation of the Fourth Amendment, the claim cannot be heard by a federal court on habeas corpus. Petitioners' argument rests on *Stone* v. *Powell, supra,* in which we held that Fourth Amendment claims are not cognizable on federal habeas corpus as long as the State provided a full and fair opportunity to litigate those claims in state court.

The Court properly rejects petitioners' argument. *Stone*'s holding derives from two propositions, neither of which applies to a claim of ineffective assistance of counsel. First, we reasoned in *Stone* that the exclusionary rule does not exist to remedy any wrong committed against the defendant, but rather to deter violations of the Fourth Amendment by law enforcement personnel. 428 U. S., at 486–489. Second, we concluded that collateral review of Fourth Amendment claims would add little to the exclusionary rule's deterrent value, but would entail significant costs to federal-state relations and particularly to the public interest in convicting and punishing the guilty. *Id.*, at 493–495.

Ineffective-assistance claims stand on a different footing. As *Strickland* makes clear, the right to effective assistance of counsel is personal to the defendant, and is explicitly tied to

the defendant's right to a fundamentally fair trial—a trial in which the determination of guilt or innocence is "just" and "reliable." *Strickland, supra,* at 685–686, 696. See also *United States* v. *Cronic,* 466 U. S. 648, 658 (1984) ("[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial"). A criminal defendant who obtains relief under *Strickland* does not receive a windfall; on the contrary, reversal of such a defendant's conviction is necessary to ensure a fair and just result. *Strickland, supra,* at 685–687. For this reason, *Strickland* explicitly stated that "[t]he principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial." 466 U. S., at 697. *Strickland* thus leaves no room for an argument that *Stone* indirectly bars some ineffective-assistance claims in federal habeas corpus proceedings.

Nor is it possible to conclude that, since the only claimed prejudice is the admission of the illegally seized bedsheet, respondent's claim actually is a Fourth Amendment claim barred by *Stone* directly. As *Strickland* teaches, the right to effective assistance of counsel ensures that defendants have a fair opportunity to contest the charges against them. A defendant has a valid ineffective-assistance claim whenever he has been denied that opportunity, regardless of the law on which counsel's error is based. It follows that respondent's claim must be judged as a Sixth Amendment claim, according to the standards set forth in *Strickland,* and not as a Fourth Amendment claim governed by *Stone.*[1]

---

[1] For the same reason, petitioners' argument that respondent's claim is barred by *Wainwright* v. *Sykes,* 433 U. S. 72 (1977), lacks merit. The gist of this argument is that respondent failed timely to raise his Fourth Amendment claim on direct appeal, and thereby forfeited the right to rely on any Fourth Amendment violation on collateral review. The argument ignores the fact that respondent's claim is not that evidence was admitted at trial in violation of the Fourth Amendment's exclusionary rule, but rather that his counsel's failure to so argue, together with counsel's failure

## II

Applying *Strickland,* respondent must show both that his counsel fell below basic standards of competence and that he was sufficiently prejudiced by the resulting errors. *Strickland,* 466 U. S., at 687. Petitioners contend that trial counsel's errors were not egregious enough to satisfy *Strickland's* performance prong. In addition, they argue that the trial judge's comments at a bail hearing constitute a factual finding that those errors were not prejudicial. The Court correctly finds that both arguments are mistaken. This holding disposes of the only claims petitioners make with respect to the legal standards for ineffective-assistance claims.

There is a far more serious argument that petitioners do *not* make, and that no court in this case has addressed. Respondent's sole claim of prejudice stems from the admission of evidence that is concededly reliable although arguably inadmissible under *Mapp* v. *Ohio,* 367 U. S. 643 (1961), and its progeny. The parties and the courts below have assumed that if the evidence in question was in fact inadmissible, and if there is a "reasonable probability" that its use at trial affected the verdict, *Strickland's* prejudice prong is satisfied. Cf. *Strickland,* 466 U. S., at 695. In my view, that assumption is not justified. In *Strickland* we emphasized that ineffective-assistance claims were designed to protect defendants against fundamental unfairness. "The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Id.,* at 685. See also *id.,* at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a

---

to conduct pretrial discovery, deprived him of his Sixth Amendment right to effective assistance of counsel. The two claims are distinct.

just result"). Accordingly, we cautioned that the "reasonable probability" test should not be applied too mechanically:

"A number of practical considerations are important for the application of the standards we have outlined. Most important, in adjudicating a claim of actual ineffectiveness of counsel, a court should keep in mind that the principles we have stated do not establish mechanical rules. Although those principles should guide the process of decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.*" *Id.*, at 696 (emphasis added).

This reasoning strongly suggests that only errors that call into question the basic justice of the defendant's conviction suffice to establish prejudice under *Strickland*. The question, in sum, must be whether the particular harm suffered by the defendant due to counsel's incompetence rendered the defendant's trial fundamentally unfair. See *id.*, at 687 (prejudice "requires [a] showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable").[2]

---

[2] Cf. *United States* v. *Cronic*, 466 U. S. 648 (1984). In *Cronic*, we held that prejudice may be presumed in some kinds of extreme circumstances, as when counsel is given no time to prepare a defense. See *id.*, at 660–661 (discussing *Powell* v. *Alabama*, 287 U. S. 45 (1932)). In such circumstances, the defendant is in effect deprived of counsel altogether, and thereby deprived of any meaningful opportunity to subject the State's evidence to adversarial testing. Prejudice is presumed for the same reason as it is presumed under *Gideon* v. *Wainwright*, 372 U. S. 335 (1963). See *Chapman* v. *California*, 386 U. S. 18, 23, n. 8 (1967) (recognizing that denial of counsel at trial could never be harmless error).

As many of our cases indicate, the admission of illegally seized but reliable evidence does not lead to an unjust or fundamentally unfair verdict. We have held repeatedly that such evidence ordinarily is excluded only for deterrence reasons that have no relation to the fairness of the defendant's trial. *United States* v. *Leon,* 468 U. S. 897, 906 (1984); *Stone* v. *Powell,* 428 U. S., at 486–488; *United States* v. *Calandra,* 414 U. S. 338, 348 (1974). Indeed, it has long been clear that exclusion of illegally seized but wholly reliable evidence renders verdicts *less* fair and just, because it "deflects the truthfinding process and often frees the guilty." *Stone* v. *Powell,* 428 U. S., at 490. See also *id.,* at 540 (WHITE, J., dissenting) (noting that often "the only consequence" of exclusion "is that unimpeachable and probative evidence is kept from the trier of fact and the truth-finding function of proceedings is substantially impaired or a trial totally aborted"). Thus, the harm suffered by respondent in this case is not the denial of a fair and reliable adjudication of his guilt, but rather the absence of a windfall.[3] Because the fundamental fairness of the trial is not affected, our reasoning in *Strickland* strongly suggests that such harm does not amount to prejudicial ineffective assistance of counsel under the Sixth Amendment.

Common sense reinforces this conclusion. As we emphasized only last Term, and as the Court recognizes again today, *ante,* at 379–380, "'[t]he very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote *the ultimate objective that the guilty be convicted and the innocent go free.'*" *Evitts* v. *Lucey,* 469 U. S. 387, 394 (1985) (emphasis added), quoting *Herring* v. *New York,* 422 U. S. 853, 862 (1975). The right

---

[3] See Amsterdam, Search, Seizure, and Section 2255: A Comment, 112 U. Pa. L. Rev. 378, 389 (1964) ("Granted that so many criminals must go free as will deter the constables from blundering, pursuance of this policy of liberation beyond the confines of necessity inflicts gratuitous harm on the public interest"), quoted in *Stone* v. *Powell,* 428 U. S., at 487, n. 24.

to effective assistance of counsel flows logically from this premise. But it would shake that right loose from its constitutional moorings to hold that the Sixth Amendment protects criminal defendants against errors that merely deny those defendants a windfall. In this case, for example, the bedsheet may have provided critical evidence of respondent's guilt, evidence whose relevance and reliability cannot seriously be questioned. The admission of the bedsheet thus harmed respondent only in the sense that it helped the factfinder make a well-informed determination of respondent's guilt or innocence. In my view, nothing in *Strickland* compels us to conclude that such an "injury" establishes prejudice for purposes of respondent's ineffective assistance claim.

I nevertheless do not vote to reverse the Court of Appeals, because neither the parties nor the courts below have considered the question I raise here. Nor do the questions presented in the petition for certiorari encompass this aspect of *Strickland*'s application.[4] I raise the issue only because the Court's rhetoric might mistakenly be read to answer a question that has not been asked. *E. g., ante*, at 380 ("[W]e decline to hold either that the guarantee of effective assistance of counsel belongs solely to the innocent or that it attaches only to matters affecting the determination of actual guilt"). Courts and litigants should not be deceived by such pronouncements. Notwithstanding its broad language, the Court explicitly recognizes that the general applicability of *Strickland* in this context has not been discussed by the parties, *ante*, at 380, and limits itself to holding that the right to effective assistance of counsel is equally enforceable on direct

---

[4] The questions presented ask (1) "[w]hether *Stone* v. *Powell* bars a claim of ineffective assistance of counsel on habeas corpus" where the basis for the claim is a failure to make a Fourth Amendment suppression motion at trial; (2) whether such a claim is barred by *Wainwright* v. *Sykes* where the Fourth Amendment issue was not preserved at trial; and (3) whether the Court of Appeals gave sufficient weight to certain supposed factual findings of the state trial judge. Pet. for Cert. i.

appeal and on federal collateral review. *Ante,* at 382–383. Thus, the question whether *Strickland* prejudice encompasses the admission of reliable but illegally obtained evidence remains an open one that can be considered on remand in this case.

Because I agree that *Stone* v. *Powell* does not govern this case, I concur in the judgment. I leave the application of *Strickland*'s prejudice prong to claims such as this one to another day.