**Elcie WINSTON, Jr., Petitioner— Appellant,**

**v.**

**John ASHCROFT, Attorney General; Robert Haro, Respondents— Appellees.**

**No. 99–56332.**
**D.C. Nos. CV–98–02203–RAP, CR–96–00702–RAP.**

United States Court of Appeals, Ninth Circuit.

Submitted June 6, 2001.*

Decided June 11, 2001.

Before D.W. NELSON, FERNANDEZ, and RYMER, Circuit Judges.

MEMORANDUM **

Petitioner Elcie Winston appeals the district court's order denying his 28 U.S.C. § 2255 petition to set aside his conviction on the ground that he was denied effective assistance of counsel.

A defendant claiming ineffective assistance of counsel must demonstrate both that (1) counsel's performance was so deficient as to fall outside the range of reason-

---

\* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts in this circuit except as provided by Ninth Circuit Rule 36–3.

able professional assistance and (2) there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

## I. Performance of Counsel

### A. *Winston's belief that he owned the 109th Place properties*

Winston argues that his trial counsel should have presented evidence to corroborate his testimony that he believed that he owned the 109th Place properties at the time of the loan applications.

The 1995 letter disclosing the quitclaim deed to Union Bank is largely irrelevant. Winston does not dispute that the quitclaim deed was not disclosed on his Union Bank loan application. The fact that it was later disclosed in a letter does not support his contention that the loan would have been approved even with this disclosure. Also, the relevant inquiry is not whether the loan would have been approved but what Winston *believed* about the effect the quitclaim deed would have on his ability to get a loan.

Testimony and income tax returns from Ingrid Winston and Sean Roy would likewise have been of marginal value because they would go primarily to what they believed, not to what Winston believed.

### B. *Winston's Motive*

Winston next contends that his trial counsel should have presented evidence of his financial security and good credit history to show that he did not have a motive to make intentional false statements to lenders. But because the suggested evidence would have done nothing to discount the obvious motive for Winston's false statements—that he had been rejected in two previous attempts to secure funding for his construction project—it would have done little to support his claim of innocence.

### C. *Testimony re: John Murrell*

Winston's third argument is that his trial counsel should have presented (1) testimony from John Murrell to impeach Special Agent Owen's testimony that she had attempted to contact every John Murrell in California and (2) a handwriting expert to compare Winston's handwriting to that on the rental agreement.

But Murrell's testimony that he had not been contacted by Agent Owen would do nothing to corroborate the existence of an actual rental agreement between Winston and Murrell. Winston's contention that trial counsel should have hired a handwriting expert, without any evidence that the expert would testify that the handwriting on the application did not match Winston's, is entirely without merit, particularly because proof that the writing was not Winston's would not prove the existence of a renter named John Murrell.

### D. *Reasons for Denial of Bank of America Loans*

Fourth, Winston argues that his trial counsel should have presented testimony of Qula Zinger that Winston's Bank of America loan application was rejected because he failed to agree to certain conditions and not because of his financial status. Winston has provided no declaration or other evidence to support his assertion that Zinger would have provided testimony to support his claim. Moreover, the reasons for Bank of America's denial of Winston's loan applications were presented in the form of correspondence from Bank of America and the testimony of James Taylor.

### E. *Construction Contract and Rental Agreements*

Winston next claims that his trial counsel should have interviewed witnesses and presented evidence to corroborate his tes-

timony regarding the undisclosed construction contract and the rental agreements for the 109th Place property.

Contrary to Winston's assertion, trial counsel did elicit testimony from Jeff Masters, Diedra Thomas, and Elizabeth Skendzic that corroborated Winston's testimony. Winston's claim that trial counsel's cross-examination of these witnesses would have been more effective had she interviewed them ahead of time is entirely speculative and does not establish conduct that is unreasonable.

Winston fails to present a declaration or other evidence to support his assertion that Toni Spiff would have presented testimony favorable to the defense. His claim that the FBI report from Spiff's interview "appeared to corroborate Appellant's testimony that she told Mr. Winston that the bank did not consider his agreement with Jeff Masters as a liability" is insufficient to show that trial counsel's failure to interview her was unreasonable.

Nor did trial counsel's failure to present testimony from Ingrid and Sean or to introduce utility records fall below the standard of reasonableness. Winston provides no evidence that Ingrid and Sean's testimony would have corroborated his claim that the move-in date on the application was correct and fails to explain how utility records would have proven that the information on the rental applications was true.

### F. Preparation to Testify

 Finally, Winston contends that his counsel failed to prepare him to testify on his own behalf. In particular, he complains that his attorney did not advise him that the government had a copy of his true tax return which varied from that which he had submitted with his loan application. After conducting an evidentiary hearing on this issue, the district court concluded that (1) Winston intended to testify; (2) Winston admitted that his trial counsel did

spend some time with him reviewing his testimony; and (3) trail counsel was under no obligation to tell Winston what his testimony should have been. Winston does not present evidence sufficient to show that the district court erred. Given that there appeared to be no obvious alternative that would allow Winston to present his side of the story, it does not seem at all "counterintuitive" that he would want an opportunity to testify despite the evidence against him. Trial counsel credibly testified that she did not elicit an explanation for the tax return from Winston because she feared the ramifications of eliciting testimony she believed to be perjured.

In sum, Winston's trial counsel's performance was well within the wide range of professional conduct considered to be reasonable.

### II. Prejudice

Even if Winston could somehow demonstrate that his trial counsel's strategic decisions were unreasonable, he cannot show prejudice. Winston's claim rests on complaints about omitted evidence that has little probative value and/or quibbles with trial counsel's performance on cross-examination. This is insufficient to show a reasonable probability that the outcome of the proceedings would have been different.

AFFIRMED.