{¶ 50} I respectfully dissent.
 {¶ 51} I would reverse Burns' conviction based on his claim of ineffective assistance of counsel.
 {¶ 52} In his final assignment of error, Burns argues that he was denied effective assistance of counsel because trial counsel failed to file a motion to suppress. He argues that the arresting officers made an invalid warrantless search of his person.
 {¶ 53} To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448, 721 N.E.2d 52, citing Strickland v. Washington
(1984), 466 U.S. 668, 687-688, 80 L. Ed. 2d 674, 104 S. Ct. 2052.
 {¶ 54} In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v.Hester (1976), 45 Ohio St.2d 71, 341 N.E.2d 304, paragraph four of the syllabus. When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." Statev. Lytle (1976), 48 Ohio St.2d 391, 358 N.E.2d 623, vacated on other grounds (1978), 438 U.S. 910, 57 L. Ed. 2d 1154,98 S. Ct. 3135; State v. Calhoun, 86 Ohio St.3d 279, 289, 1999-Ohio-102,714 N.E.2d 905.
 {¶ 55} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus;Strickland, supra at 686.
 {¶ 56} Burns claims his counsel was ineffective for failing to move to suppress the evidence, to wit: the heroin found in his pocket. Generally, trial counsel's failure to file a motion to suppress does not per se constitute ineffective assistance of counsel. Kimmelman v. Morrison (1986), 477 U.S. 365, 384;State v. Nields, 93 Ohio St.3d 6, 34, 2001-Ohio-1291. A criminal defendant asserting a claim of ineffective assistance on this basis must show that the failure to file the motion to suppress caused him or her prejudice. State v. Robinson (1996),108 Ohio App.3d 428, 433, 670 N.E.2d 1077. The burden is on the defendant-appellant to point to evidence in the record supporting suppression of evidence.
"A failure to file a motion to suppress may constitute ineffective assistance of counsel where there is a solid possibility that the court would have suppressed the evidence.State v. Garrett (1991), 76 Ohio App. 3d 57, 600 N.E.2d 1130. However, even when some evidence in the record supports a motion to suppress, we presume that defense counsel was effective if `the defense counsel could reasonably have decided that the filing of a motion to suppress would have been a futile act.'State v. Edwards, (July 11, 1996), Cuyahoga Co. App. No. 69077, unreported, citing State v. Martin (1983), 20 Ohio App. 3d 172,485 N.E.2d 717. See, also, Strickland, supra, at 689." Statev. Dotson (Mar. 27, 1998), Pickaway App. No. 97 CA 9.
 {¶ 57} Burns argues that filing the motion would not have been a futile act because the officers did not have valid grounds to make a warrantless search. I would find that the officers may have performed an illegal search when they reached into Burns' pocket, and thus a motion to suppress would not have been futile.
 {¶ 58} The Fourth Amendment of the United States Constitution and Section 14, Article I of the Ohio Constitution protect against unreasonable searches and seizures. In general, warrantless searches are unreasonable and therefore invalid.Marshall v. Barlow's Inc. (1978), 436 U.S. 307, 312,56 L.Ed.2d 305, 98 S. Ct. 1816. However, one of the exceptions to this general rule is a "pat down search" for weapons. Under Terry v.Ohio (1968) 392, U.S. 1, 22, 88 S. Ct. 1868, 20 L. Ed. 2d 889, the United States Supreme Court determined "a police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest."
 {¶ 59} In the instant case, the officers were not arresting Burns, but merely asking him whether he had "anything on him that he shouldn't." When Burns replied, "I might," the officers ordered him to remove his hand from his pocket, and Officer Foye reached into Burns' pocket and removed the heroin. The search is questionable as to its legality.
 {¶ 60} Officer Foye testified that, after Brown was in the ambulance, he attempted to interview Burns about what had happened inside the house before their arrival. He stated that Burns wanted to go back into the house to retrieve his keys. Foye testified that Burns was inside the house for three to five minutes and, when he came outside, he attempted to enter the ambulance. According to Foye, riding in the ambulance "is something that is pretty normal." He further testified that Burns was excited and sweating profusely. Burns' manner caused Foye concern that Burns might be using drugs. The officer testified:
"At one point, I have an obligation to the EMTs, and I did not want him to get into the ambulance until we established that he's not taking something dangerous into the ambulance. Patrick went to get into the ambulance, and we stopped him and said, `Patrick, before you get in, do you have anything on you that you shouldn't have.' And he immediately froze up, looked even more nervous at that point, and said, `I might.'
At one point he started to put his hand in his right front pocket, which is something we never allow someone to do, and stopped his hand before he could reach in the pocket.
* * *
At one point I pulled his arm from his pocket * * *. I then reached into his pocket and I said, `There's nothing in here that's going to harm me? No.' I reached into his pocket and pulled out bags of heroin, what I know is heroin. So we pulled these bags out of his front right pocket."
At that point, the officers arrested Burns for drug possession.
 {¶ 61} Officer Daniel Rusnak testified that, when the officers responded to the dispatch call, they were not looking for narcotics, but only to determine the nature of the disturbance between a male and female.
 {¶ 62} Foye's testimony implies that he questioned Burns under Terry. Burns was asked about the contents of his pockets because the officers "have an obligation to the EMTs," and did not want Burns to get into the ambulance until they established that "he's not taking something dangerous into the ambulance." However, instead of a protective pat-down search, the officers intrusively reached into Burns' pocket.
 {¶ 63} It could also be argued that the search was consensual and enough reasonable suspicion existed when Burns replied that he "might" have something on him that he should not have. Regardless, the question asked by Foye was open-ended and not directed exclusively toward weapons or officers' safety pursuant to Terry.
 {¶ 64} Based on the evidence and circumstances surrounding the search and the discovery of the heroin, I would find that a solid possibility exists that the court would have suppressed the evidence and, thus, the filing of such a motion would not have been futile. Therefore, Burns did not receive the effective assistance of trial counsel, and he is entitled to a new trial. Accordingly, I would reverse.