67 F.3d 296
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Donald THOMAS-BEY, Petitioner-Appellee,
v.
Eugene M. NUTH, Warden, Maryland Penitentiary; J. Joseph
Curran, Jr., Attorney General of Maryland,
Respondents-Appellants.
Donald THOMAS-BEY, Petitioner-Appellant,
v.
Eugene M. NUTH, Warden, Maryland Penitentiary; J. Joseph
Curran, Jr., Attorney General of Maryland,
Respondents-Appellees.
 Nos. 95-4000, 95-4001.
 United States Court of Appeals, Fourth Circuit.
 Sept. 22, 1995.
 
 ARGUED: Ann Norman Bosse, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Baltimore, Maryland, for Appellants. Henry Mark Stichel, PIPER & MARBURY, Baltimore, Maryland, for Appellee.
 ON BRIEF: J. Joseph Curran, Jr., Attorney General of Maryland, OFFICE OF THE ATTORNEY GENERAL, Baltimore, Maryland, for Appellants.
 Before HALL and MURNAGHAN, Circuit Judges, and BUTNZER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 From October 18, 1982 to November 18, 1982, Appellee, Donald Thomas-Bey ("Thomas"), was tried before a Baltimore County Circuit Court jury on two counts of first-degree murder, one count of first-degree rape, two counts of first-degree sexual offense, and one count of robbery with a deadly weapon. He was found guilty on all counts, and was sentenced to several life sentences and one sentence of death. Thomas's convictions and sentences were upheld on direct appeal, but in state post-conviction proceedings, the Baltimore County Circuit Court twice ordered a new capital sentencing, finding ineffective assistance of counsel. The circuit judge's decision was ultimately reversed by the Maryland Court of Appeals, which reinstated the death sentence.
 
 
 2
 On May 16, 1994, Thomas filed a petition for a writ of habeas corpus in the United States District Court for the District of Maryland. On December 6, 1994, the district court entered an order denying the habeas petition as to all grounds except the ineffective assistance of counsel claim. Accordingly, the district court affirmed all of the convictions and life sentences, but vacated the death sentence and remanded the case to the Circuit Court of Baltimore County for resentencing on that point. See Thomas-Bey v. Smith, 869 F.Supp. 1214 (D.Md.1994).
 
 
 3
 On December 27, 1994, the State filed a timely notice of appeal, alleging that the district court had erred in finding that there was ineffective assistance of counsel, and had thus erred in vacating the death sentence. On December 28, 1994, Thomas filed a timely notice of cross-appeal, alleging primarily: (1) that the district court erred in rejecting his argument that his counsel's failure to preserve certain jury selection challenges amounted to ineffective assistance of counsel, and (2) that the district court erred in finding that there was no Brady violation. We affirm the district court's decision throughout.
 
 
 4
 Initially, we dispose of Thomas's arguments on cross-appeal. First, we reject Thomas's argument that his counsel, R. Clark Kinsley, provided ineffective assistance of counsel by inadvertently failing to preserve certain jury composition challenges for appeal. Although Kinsley's waiver of the jury challenges may indeed have been unreasonable, the district court correctly found that no actual prejudice was shown; indeed, the record does not suggest either that the jury members were racially prejudiced, as alleged by Thomas, or that any remarks about interracial sex made by certain jury members in any way suggested their impartiality. Second, the district court properly rejected Thomas's argument that the prosecution withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), finding that the evidence allegedly withheld would not have been admissible or, even if admissible, would have been largely cumulative. We perceive no errors in those conclusions. Additionally, all other arguments set forth by Thomas on cross-appeal are unavailing.
 
 
 5
 We also agree with the finding of the district judge that there was ineffective assistance of counsel necessitating the vacation of the death sentence where the undisputed facts showed that Thomas's counsel, Kinsley, consented to and failed to attend a post-trial, presentencing interview of Thomas by a psychiatrist, Dr. Michael Spodak, who had been employed by the prosecution to testify on the State's behalf at Thomas's capital sentencing proceeding. Specifically, one of the prosecutors, during the time between Thomas's conviction and his sentencing hearing, called Kinsley to obtain his consent to having Dr. Spodak interview Thomas. Although Dr. Spodak had been a member of a neutral panel that had earlier evaluated Thomas for competence and sanity before trial, he had since been retained as an expert by the State's Attorney's office for the purpose of testifying at Thomas's sentencing. Kinsley consented to the interview, and the trial court, upon a motion by the State's Attorney's office (which indicated to the court that Kinsley had consented to the interview), ordered the interview to take place. Kinsley also instructed his client to cooperate fully with Dr. Spodak, and did not himself attend the interview. At Thomas's sentencing, Dr. Spodak testified, and his written report was admitted into evidence, over the strong objections of Kinsley who vigorously stated that at the time of his consent, he did not know that Dr. Spodak had been retained by the State's Attorney's office. At the sentencing hearing, the sentencing judge relied heavily, if not exclusively, upon Dr. Spodak's testimony in imposing the death sentence.
 
 
 6
 Kinsley's granting of consent to the Spodak interview, without first investigating the relevant circumstances surrounding the interview, fell far below the level of reasonable conduct required by attorneys under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), and did not, as the State contends, simply amount to a permissible tactical decision by Kinsley. As cogently stated by the district court:
 
 
 7
 [T]o successfully assert an ineffective assistance of counsel claim, Thomas must show both (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 688, 694, 104 S.Ct. at 2064, 2068. This Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," and "apply[ ] a heavy measure of deference to counsel's judgments." Id. at 690-91, 104 S.Ct. at 2065-66.
 
 
 8
 869 F.Supp. at 1224-25.
 
 
 9
 In finding, after a thorough review of the facts and the law, that the first prong of the Strickland inquiry was clearly met here, the district court correctly held:
 
 
 10
 Even applying a heavy measure of deference to the "judgments" that he made in this case, Kinsley's consent and failure to attend the postconviction interview of Thomas by Dr. Spodak fell below the level of reasonably competent representation guaranteed by the Sixth Amendment. Trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691, 104 S.Ct. at 2066. Kinsley "neither investigated, nor made a reasonable decision not to investigate" the facts and law surrounding the critical decision to allow Dr. Spodak to interview Thomas unchaperoned. Kimmelman v. Morrison, 477 U.S. 365, 385, 106 S.Ct. 2574, 2588, 91 L.Ed.2d 305 (1986).
 
 
 11
 It is undisputed that at the time of his consent, Kinsley did not know Dr. Spodak would interview Thomas as an expert for the prosecution, not as an impartial employee of Perkins [hospital]. Further, Kinsley testified repeatedly that he had no idea about the purpose of the interview by Dr. Spodak. He did not know the specific type of testimony given or issues raised in death penalty hearings, he did not know what type of information Dr. Spodak was looking for, or even that Dr. Spodak was going to testify at the sentencing.... Kinsley thought that Dr. Spodak was merely going to update his "bland" written competence/sanity report. Further, Kinsley did not consider that he likely could have prevented Dr. Spodak from testifying at Thomas's sentencing if he did not consent to the interview.... In short, Kinsley's consent to Dr. Spodak's interview was given in complete ignorance.
 
 
 12
 Dr. Spodak, on the other hand, knew exactly what he was doing. Maryland law required that, before imposing a sentence of death, a trial court determine whether a number of mitigating circumstances existed, including impaired capacity and lack of future dangerousness. At Thomas's sentencing, Dr. Spodak testified that he interviewed Thomas with the specific intent of evaluating whether Thomas's capacity was substantially impaired and whether he would constitute a continuing threat to society.
 
 
 13
 * * *
 
 
 14
 Kinsley acted under this cloud of misconceptions, and he failed to make even the most rudimentary inquiries that would have revealed the gravity of the situation. He did not ask the State about why it sought to have Dr. Spodak interview Thomas or inquire into what capacity Dr. Spodak would interview Thomas. Nor did Kinsley appear to consider the legal implications of his consent. While the record establishes that Kinsley had only the best intentions for his client, his "decisions" to consent and not attend the interview were not reasoned judgments in any respect.
 
 
 15
 * * *
 
 
 16
 The explanation that Kinsley offers for his consent can only be described as one of desperate hope. He testified that he only consented to the interview because (1) he thought Dr. Spodak was impartial, not retained by the State's Attorney's office; and (2) given that, he was hopeful that something favorable, anything, would somehow result from the interview. [The State's] attempt to characterize this justification as a reasonable strategic choice is unpersuasive. Kinsley's actions were neither strategic nor reasonable.
 
 
 17
 ............................................................
 
 
 18
 ....................
 
 
 19
 * * *
 
 
 20
 Moreover, even truly strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 691, 104 S.Ct. at 2066. Kinsley's failure to even cursorily investigate or consider the implications of his consent to the interview was not supported by anything approaching a "reasonable professional judgment." Instead, the consent was motivated by erroneous assumptions about the role of Dr. Spodak and the purpose of the interview, misperceptions that would have been corrected by simple inquiries. Thus, even if Kinsley's actions were "strategic," they clearly were not reasonable.
 
 
 21
 869 F.Supp. at 1225-27.
 
 
 22
 The district court also properly found that the second prong of the Strickland test--that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different--had been plainly established. Indeed, at oral argument, the State conceded that prejudice had been shown.
 
 
 23
 Accordingly, the district court's judgment is throughout
 
 
 24
 AFFIRMED.