[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY. {¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
 {¶ 2} After a bench trial, the defendant-appellant Patrick C. Barr was convicted of robbery, under R.C. 2911.02(A)(2), a second-degree felony, and acquitted of aggravated robbery. On appeal, Barr raises six assignments of error. Barr's appellate brief fails to meet the requirements of App.R. 16, but, in the interests of justice, we address the assignments of error and arguments as we discern them.
 {¶ 3} During the early morning of September 15, 2001, Barr entered a Dairy Mart store, walked along the aisles, and left after seeing a customer. He returned when the customer was gone and demanded money from the Dairy Mart clerk. Barr had his hand in his pocket, which suggested to the clerk that he had a gun, and he told her, "[E]ither give me the [expletive deleted] money or I'm going to hurt you." After hitting "no sale" on the register, the clerk backed away from the register, and Barr leaned in to take money. After Barr left, the clerk called for emergency assistance.
 {¶ 4} In the first assignment of error, Barr claims that he suffered a constitutional deprivation of due process. Barr argues that this resulted from the prosecution's failure to advise him that the Dairy Mart clerk, the robbery victim, had looked not only at a six-photo array that was disclosed in discovery, but, also a larger photo of Barr that was in the array, but not shared with his counsel prior to trial. Barr contends that the individual photo was shown to the clerk before she viewed the six-photo array.
 {¶ 5} At trial, the clerk unequivocally identified Barr as the perpetrator. A second witness employed nearby also testified that she saw Barr outside the store where she worked near the time when the robbery was committed. This witness's description was similar to that given by the clerk. The clerk said that she viewed the six-photo array before she viewed the individual photo. During cross-examination concerning her pretrial identification of Barr, the Dairy Mart clerk said, "Well, that kind of looks like him, the middle picture. And that's when he [the officer] showed me the other picture, the more blowed up looking face * * * Yeah, that is him." The clerk stated that she was never told that a photo of the person whom the police believed to be the perpetrator was even included in the six-photo array she was asked to look at, nor was she told by the officer that Barr's individual photo was the only one he had with him. She also stated that she had not bothered to read anything printed on the sheet that contained the individual photo of Barr.
 {¶ 6} Suppression by the prosecution of evidence that is favorable to the accused and is material either to guilt or to punishment is a violation of due process.[1] Even if we assume that the prosecution withheld the individual photo of Barr, we conclude that there was no due-process violation. On the record before us, there is no reasonable probability of a different trial outcome had the defense received a copy of the larger photo of Barr.[2] Accordingly, the first assignment of error is overruled.
 {¶ 7} In the second assignment of error, Barr contends that he was deprived of the effective assistance of counsel because his counsel failed to file a timely motion to suppress identification testimony or to hire an expert who would show the high incidence of witness misidentification from photo arrays, and because counsel failed to have a particular witness testify. To establish ineffective assistance, a defendant must show that, in light of all the circumstances, counsel's performance fell below an objective standard of reasonable representation and that, but for his unprofessional errors, there is a reasonable probability that the result of the proceedings would have been different.[3] A reasonable probability is one sufficient to undermine confidence in the result.[4]
 {¶ 8} Failure to file a suppression motion does not per se constitute ineffective assistance of counsel.[5] Considering the identification of Barr as the perpetrator at trial and the circumstances of the pretrial photo-array showing to the state's witnesses, we cannot say that the outcome of the trial would have been different had counsel attempted to suppress the identification testimony. Barr further contends that had an expert testified about the problems inherent in eyewitness identification, there is a reasonable probability that the outcome of the trial would have been different, given that his hair was different from the description given by the robbery victim. Generally an attorney's determination of which witnesses to call falls within the realm of trial tactics,[6] and a court should not ordinarily second-guess such tactical decisions.[7] The record is devoid of what kind of testimony an eyewitness identification expert would have provided. Because knowledge regarding potential testimony could only be gained by looking outside the record,[8] Barr's claim cannot appropriately be evaluated on direct appeal.[9] We note that Barr's counsel, presumably aware of the issues involving the identification of his client, used cross-examination of the state's witnesses to impeach them.[10]
 {¶ 9} Finally, Barr contends that one witness who should have been called on his behalf was not. We note that Barr's girlfriend, her cousin, and another friend of Barr were called as witnesses. Which witnesses to call, as we have already noted, is generally a matter of trial tactics, and such tactical decisions should ordinarily not be second-guessed by a reviewing court.[11] On this record, we cannot say that defense counsel's performance fell below an objective standard of reasonable representation, or that, even if unprofessional errors were committed, there is a reasonable probability that the result of the proceeding would have been different. Accordingly, the second assignment of error is overruled.
 {¶ 10} In the third assignment of error, Barr contends that the cumulative effect of the errors identified in his first two assignments deprived him of a fair trial. We have found no error that prejudiced Barr under either the first or the second assignments of error. "Such [nonprejudicial] errors cannot become prejudicial by sheer weight of numbers."[12] Accordingly, the third assignment of error is overruled.
 {¶ 11} In the fourth assignment of error, Barr contends that there was insufficient evidence to convict him. He also contends that his conviction was against the manifest weight of the evidence. For a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found the essential elements of robbery proved beyond a reasonable doubt.[13] The conviction should not be disturbed unless the reviewing court determines that reasonable minds could not reach the conclusion reached by the trier of fact.[14] R.C. 2911.02(A)(2) provides, "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: * * * Inflict, attempt to inflict, or threaten to inflict physical harm on another." It was within the discretion of the trier of fact to believe the prosecution's witnesses and to reject the evidence advanced by Barr.[15] The prosecution's evidence, if believed, was sufficient to convict Barr of robbery.
 {¶ 12} "A reviewing court considering a manifest-weight claim `reviews the entire record, weighs the evidence and all reasonable inferences, [and] considers the credibility of witnesses.'"[16] The question for the reviewing court is "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction."[17]
 {¶ 13} On this record, after viewing the evidence in the light most favorable to the state, we hold that a rational trier of fact could have found that the state had proved the elements of robbery beyond a reasonable doubt. Moreover, since the evidence was sufficient, the trial court did not err in overruling Barr's motion for a new trial or his Crim.R. 29 motion for a judgment of acquittal.[18] Additionally, we cannot say after reviewing the record that this is the exceptional case in which the evidence weighs heavily against the conviction, and it is, therefore, not a candidate for reversal on weight-of-the-evidence grounds.[19] Accordingly, the fourth assignment of error is overruled.
 {¶ 14} In the fifth assignment of error, Barr contends again that the withheld photo of Barr resulted in prejudice because it precluded the pursuit of a pretrial motion to suppress, and that it should have resulted in the granting of Barr's motion for a new trial. In the sixth assignment of error, we discern that Barr contends that the trial court committed prejudicial error by refusing to allow a witness to testify in rebuttal to a prosecution witness's testimony concerning the robber's physical description. Barr's arguments, as we discern them, repeat those we have already considered and overruled. Accordingly, we overrule Barr's fifth and six assignments of error.
 {¶ 15} Therefore, we affirm the judgment of the trial court.
 {¶ 16} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Sundermann, P.J., Gorman and Winkler, JJ.
[1] See Brady v. Maryland (1963), 373 U.S. 83, 87, 83 S.Ct. 1194;State v. LaMar, 95 Ohio St.3d 181, 184, 2002-Ohio-2128, 767 N.E.2d 166, at ¶ 27.
[2] See Kyles v. Whitley (1995), 514 U.S. 419, 433-434,115 S.Ct. 1555; see, also, United States v. Bagley (1985), 473 U.S. 667,105 S.Ct. 1555.
[3] See Strickland v. Washington (1984), 466 U.S. 668, 687-688,104 S.Ct. 2052; see, also, State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraphs two and three of the syllabus.
[4] See id.; see, also, State v. Herring, 94 Ohio St.3d 246, 261,2002-Ohio-796, 762 N.E.2d 940.
[5] See Kimmelman v. Morrison (1986), 477 U.S. 365, 384,106 S.Ct. 2574.
[6] See State v. Hunt (1984), 20 Ohio App.3d 310, 312,486 N.E.2d 108.
[7] See State v. Edwards (1997), 119 Ohio App.3d 106, 110,694 N.E.2d 534.
[8] See State v. Madrigal, 87 Ohio St.3d 378, 391, 2000-Ohio-448, 721 N.E.2d
[9] See id.; State v. Cooperrider (1983), 4 Ohio St.3d 226, 228,448 N.E.2d 452.
[10] See Madrigal at 390, 2000-Ohio-448, 721 N.E.2d 52.
[11] See State v. Hector, 2nd Dist. No. 18653, 2002-Ohio-1200.
[12] State v. Williams, 99 Ohio St.3d 439, 459, 2003-Ohio-4164,793 N.E.2d 446, at ¶ 100; see, also, State v. Hill, 75 Ohio St.3d 195,212, 1996-Ohio-222, 661 N.E.2d 1068.
[13] See Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781; State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[14] See id. at 273, 574 N.E.2d 492.
[15] See State v. Dehass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[16] State v. Group, 98 Ohio St.3d 248, 259, 2002-Ohio-7247,781 N.E.2d 980, at ¶ 77, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
[17] See State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717;State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, at ¶ 77.
[18] See Crim.R. 33(A)(4); State v. Thomas, 1st Dist. No. C-010724, 2002-Ohio-7333, appeal denied, 98 Ohio St.3d 1515, 2003-Ohio-1572,786 N.E.2d 64.
[19] See Group, supra, at 260, 781 N.E.2d 980, at ¶ 86.