**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0184n.06
Filed: March 15, 2006

**No. 04-1353**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ROBERT LEE SMITH | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| V. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN AT ANN ARBOR |
| BLAINE C. LAFLER, | ) | |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**Before:**     **ROGERS and SUTTON, Circuit Judges; FORESTER, Senior District Judge.**[*]

**FORESTER, Senior District Judge.**  Respondent-Appellant Blaine C. Lafler, Warden of

the Saginaw Correctional Facility, appeals the district court's conditional grant of petitioner Robert

Lee Smith's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 based on ineffective

assistance of counsel.  For the reasons set forth below, we AFFIRM IN PART the district court's

grant of habeas relief.

---

[*]     The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting
by designation.

1

## I.

The petitioner was charged with one count of first-degree and two counts of third-degree criminal sexual conduct in Oakland County, Michigan, Circuit Court in connection with complaints made by his daughter, Marjani, who was sixteen years old at the time of the alleged offenses. Following a jury trial, the petitioner was convicted on the first-degree count and one of the third-degree counts, but acquitted of the other third-degree count. On October 20, 1999, the petitioner was sentenced to 20 to 50 years and 10 to 15 years on the counts, respectively, to be served concurrently.

On direct appeal, the Michigan Court of Appeals granted the petitioner's motion for remand on his ineffective assistance of counsel claims, after which the trial court held an evidentiary hearing but ultimately found no ineffective assistance of counsel. The Michigan Court of Appeals affirmed the petitioner's conviction and the Michigan Supreme Court declined to hear any further appeal. Thereafter, the petitioner filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that his trial counsel was constitutionally ineffective for failing to investigate and present certain exculpatory evidence and for failing to interview and call certain witnesses at trial. The district court conditionally granted the petition and this appeal followed.

## II.

At trial, the petitioner was convicted of sexually assaulting his daughter in July of 1997 and January of 1998. There was no physical evidence presented at the trial other than medical evidence that Marjani had contracted human papilloma virus ("HPV"), a sexually transmitted disease. Rather, the trial focused on the credibility of Marjani as the complaining witness and the expert testimony presented by each side.

2

Marjani testified that the petitioner forced her to have sex with him on three occasions and that he was the only person with whom she had ever had sex. She testified that after each incident she bathed and washed her sheets and clothing, effectively destroying any physical evidence of the assaults. She did not tell anyone immediately, alleging that the petitioner warned her that no one would believe her if she did.

In October of 1997, Marjani told a friend about the alleged abuse, who later told a teacher at their school, who passed the information along until ultimately a representative of child protective services came to Marjani's school to investigate. At a meeting with these officials, Marjani refused to speak with them about the allegations. On a separate occasion, Marjani claimed to have been assaulted again by her father and seemed visibly upset, but refused to participate in a medical exam to collect medical evidence and refused to tell either her mother or child protective services. Marjani also later refused to speak with investigators about her allegations of sexual abuse, but did speak with a psychologist, Elaine Swenson, about the abuse. At Swenson's urging, Marjani ultimately agreed to a medical examination, gave a written statement to detectives, and an arrest warrant was issued for the petitioner. The medical examination revealed that Marjani was sexually active and that she had contracted HPV. According to the prosecution's expert witnesses, Marjani's behavior and manner throughout this time were consistent with the behavior of a sexual abuse victim.

Elaine Swenson, Marjani's psychologist, was called by the defense at trial. She testified that she did not believe Marjani had an appropriate reaction for a victim of abuse. Based on consultative testing conducted by another psychologist and a psychiatrist, Ms. Swenson concluded that Marjani had a defect in her reality base that affected how she saw the world. The defense also called a

3

urologist, who testified that the petitioner did not have HPV and, at the time of examination, had no lesions by which HPV is passed. Sabrina Smith, Marjani's mother and the petitioner's wife, was the final defense witness. She testified that, despite an active sex life with her husband, she had not contracted HPV and was not aware that her husband had ever been treated for HPV. She also testified that Marjani had repeatedly lied to her and the petitioner on a variety of family matters and was openly defiant.

The main question in the present appeal concerns trial counsel's failure to discover a psychiatric report dated March 27, 1998, prepared by Dr. Jeffrey London during a stay by Marjani at Havenwyck Hospital, a psychiatric facility, for an in-patient assessment. Dr. London's report states that Marjani had admitted to being sexually active in the past, that she had recently been treated for HPV, that she acknowledged "sexual activity" with a boyfriend in the past, and that she had recently taken a pregnancy test that turned out to be negative. Trial counsel testified at the post-conviction state-court evidentiary hearing that he viewed the case as a credibility contest between Marjani and her parents and, had he known about the report, he would have used it during the cross-examination of Marjani to undermine her credibility – his major trial strategy – and attempt to show an alternate source for Marjani's HPV.

The Michigan Court of Appeals suggested that counsel's failure to use the Havenwyck report could be explained away as trial strategy and further concluded that the petitioner was not prejudiced by the failure to introduce the report, as trial counsel was able to challenge Marjani's truthfulness through the examination of other witnesses. When considering the same charge on habeas review, the district court reached a different conclusion, finding that the Michigan Court of Appeals unreasonably applied the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

Given that Marjani's credibility was central to the case and proof of the petitioner's guilt was not overwhelming, the district court concluded that the Michigan court was wrong in concluding that the petitioner's ineffective assistance of counsel claim lacked merit. The district court conditionally granted the writ, the condition being that the State of Michigan provide the petitioner with a new trial within 120 days or release him. This appeal followed.

## III.

When the district court grants a prisoner habeas relief, the district court's legal conclusions are reviewed *de novo*, and its factual findings for clear error. *Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004). An ineffective assistance of counsel claim is a mixed question of law and fact that is reviewed *de novo*. *Id*. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") is applicable to the petitioner's habeas petition because he filed his petition after the effective date of the statute and the Michigan Court of Appeals addressed the claims raised in the petition on direct review. Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) (relevant portions codified as amended at 28 U.S.C. § 2254 (2000)); *Williams v. Taylor*, 529 U.S. 362, 402 (2000).

*Strickland v. Washington*, 466 U.S. 668 (1984), represents clearly established federal law as determined by the United States Supreme Court and applies to the petitioner's claim that his attorney was constitutionally ineffective. *See Williams v. Taylor*, 529 U.S. at 390. Under *Strickland* an ineffective assistance of counsel claim has two elements:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the

5

defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 433 U.S. at 687. In order for the petitioner to be entitled to habeas relief under the AEDPA, he must show that the Michigan Court of Appeals unreasonably applied the *Strickland* standard to trial counsel's performance and in determining whether there was any prejudice to the petitioner's defense.

**A.**

We conclude that the Michigan Court of Appeals unreasonably concluded that trial counsel's decision not to present the Havenwyck report was a matter of strategy. Under *Strickland*, the petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 688. The reasonableness of counsel's actions must be judged on the facts of the petitioner's case, viewed as of the time of counsel's conduct, recognizing that counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. *Strickland* specifically stated:

> These standards require no special amplification in order to define counsel's duty to investigate . . . strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id*. at 690-91. The Supreme Court elaborated on this standard in concluding that a failure to conduct pretrial discovery, even if counsel's performance at trial is "generally creditable," cannot excuse an

6

"apparent and pervasive failure to 'make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986) (quoting *Strickland*, 466 U.S. at 690).

We believe that counsel's failure to fully investigate Marjani's stay at Havenwyck Hospital fell below an objective standard of reasonableness. The Michigan Court of Appeals unreasonably applied the pretrial investigation standard set out in *Strickland* to pass this off as trial strategy. Had counsel been aware of the report and affirmatively opted not to use it at trial, then that decision could be considered one of trial strategy. However, counsel's failure does not represent an informed strategic decision not to pursue a particular lead. Rather, counsel made no attempt to ascertain the contents of the Havenwyck report. Marjani's stay at Havenwyck was an obvious evidentiary lead central to the defense. Even with a large measure of deference to counsel, his failure to investigate was unreasonable when, based on what he knew at the time, he chose not to pursue this evidentiary lead.

Counsel's failure to pursue Marjani's stay at Havenwyck was not a reasonable decision to forgo a line of investigation. Counsel testified in state court that "there were a lot of things going on" after the petitioner was arrested and that the petitioner and his wife had very little contact with Marjani after the petitioner's arrest. Counsel also testified that he was aware that Marjani had stayed at Havenwyck, but that he relied on Mrs. Smith for most of the reports and other information that he was going to use at trial. Therefore, counsel knew that Mrs. Smith did not have direct access to Marjani or direct involvement in her treatment, but nevertheless relied on Mrs. Smith to gather the records of Marjani's psychological treatment and determine what was relevant. Further, counsel was aware of the particular physician who treated Marjani at Havenwyck, Jeffrey London, as Dr. London

7

appeared on the witness list that he had prepared approximately one year before trial. However, counsel made no attempt to interview Dr. London prior to trial. Counsel's failure to investigate Marjani's stay at Havenwyck was not a limitation on the pretrial investigation based on a reasonable professional judgment that exploring Marjani's stay at Havenwyck was unnecessary. *See Kimmelman*, 477 U.S. at 385-86; *Strickland*, 466 U.S. at 690. Rather, his failure to investigate Marjani's stay at Havenwyck constituted deficient performance.

**B.**

We further conclude that the finding by the Michigan Court of Appeals that the petitioner was not prejudiced by counsel's deficient pretrial investigation is an unreasonable application of federal law. The Michigan Court of Appeals reasoned that counsel had offered the testimony of a urologist to the effect that the petitioner did not have HPV, which testimony placed Marjani's credibility into question, as well as her claim that her first and only sexual partner was the petitioner. Therefore, reasoned the state court, counsel's failure to introduce the Havenwyck report did not deprive the petitioner of a substantial defense, and the petitioner was not prejudiced by the failure to introduce the Havenwyck report. *People v. Smith*, No. 223231, 2002 WL 483439, at *2 (Mich. Ct. App. Mar. 26, 2002) (citing *People v. Daniel*, 523 N.W.2d 830, 837 (Mich. Ct. App. 1994)). The state court's formulation of the prejudice inquiry under *Strickland* and its application to the petitioner's case are unreasonable applications of federal law.

Even if counsel's performance was deficient, the petitioner must additionally "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The Supreme Court elaborated:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. . . . Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.

*Id*. at 695-96. The Michigan Court of Appeals simply concluded that because counsel had put on *some* evidence in support of his theory of the defense, the petitioner was not prejudiced by any failing in the pretrial investigation.[1] However, the inquiry is whether there is a reasonable probability that if counsel had conducted an adequate pretrial investigation, the result of the proceeding would have been different. The Michigan Court of Appeals' failure to consider the totality of the omitted evidence in the context of the prosecution's case is an unreasonable application of federal law. *See Williams*, 529 U.S. at 416 (O'Connor, J., concurring).

Counsel's failure to discover and present the Havenwyck report is sufficient to undermine confidence in the outcome of the proceeding. The state's case against the petitioner was relatively weak, as there was no direct physical evidence that he abused his daughter. This is not a case where there is "overwhelming record support" for the conviction of the petitioner. *Strickland*, 466 U.S. at 696. Indeed, he was acquitted of one of the charges. The state's case rested on the testimony of Marjani, Dr. Carol Rizzo, and Ms. Therese McNeil, the last two witnesses testifying that Marjani's

---

[1]The Michigan Court of Appeals' focus on whether the petitioner was deprived of a substantial defense borders on an outcome-determinative test specifically rejected by the Supreme Court in *Strickland*. 466 U.S. at 693-94. It appears from a footnote in its opinion that the Michigan Court of Appeals required the petitioner to show that the evidence that counsel failed to produce would constitute a nearly complete defense that was not otherwise presented at trial. To require the petitioner to show counsel's performance deprived him of a defense to the charges borders on requiring him to show that the outcome of the proceedings would have been different; such a result is contrary to Supreme Court precedent.

9

behavior was consistent with that of an abuse victim.[2] An admission from Marjani that she had engaged in "sexual activity" with a boyfriend would have been damaging to her credibility and would have suggested directly, in the victim's own words, an alternate source for the HPV. Given the prosecution's relatively weak case, it was unreasonable for the Michigan Court of Appeals to have concluded that the petitioner was not prejudiced by his counsel's performance simply because counsel presented *some* evidence to support his defense strategy.

**IV.**

Based on the above, it is not necessary for the court to consider the petitioner's claim that counsel's failure to interview and present the testimony of Ms. Diane Harris, the crisis counselor at Marjani's school, and Ms. Wendy Cutler, one of Marjani's teachers, constituted ineffective assistance of counsel. Similarly, the court declines to consider the "cumulative error theory" discussed by the district court.

We AFFIRM the conditional grant of a writ of habeas corpus based on the petitioner's ineffective assistance of counsel claim and REMAND this matter for the issuance of a conditional writ of habeas corpus that will result in the petitioner's release from prison unless the State of Michigan commences a new trial against him within 120 days from the date the mandate in this case issues.

---

[2]Dr. Carol Rizzo was the gynecologist who first diagnosed Marjani with HPV. Ms. McNeil was a therapist with Care House, an organization that helps investigate child sexual abuse.