CLAY, Circuit Judge,
dissenting.
The uncontested record before us clearly demonstrates that Eric Jackson’s trial counsel neglected to conduct even the most basic investigation of the circumstances of the shooting for which his client was facing charges of aggravated murder, even though significant questions remained about the shooting and there were conspicuously self-evident avenues of investigation that trial counsel could have pursued. Trial counsel’s failure to investigate deprived Jackson of an eye-witness who would have testified that the shooting was a tragic' accident. Because I believe that this dereliction of the clearly established duty to investigate can only be condoned by an unreasonable application of Supreme Court precedent, I conclude the district court’s order denying habeas should be reversed.
Under the AEDPA standards that govern this case, we may only grant habeas where the state court’s reasoning in denying post-conviction relief is “contrary to” or constitutes an “unreasonable application” of clearly established Supreme Court law. 28 U.S.C. § 2254(d). As indicated in the majority opinion, the Supreme Court has explained that under the unreasonable application prong, “a habeas court must determine what arguments or theories *466 supported ... the state court’s decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.” Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011). When these standards are applied to ineffective assistance of counsel claims, the ultimate question “is whether there is any reasonable argument that counsel satisfied Strickland’s deferential standard.” Id. at 788. The unreasonableness inquiry applies to both prongs of the Strickland standard: deficient performance and prejudice. Cullen v. Pinholster, 563 U.S. 170, 131 S.Ct. 1388, 1403-04, 1408, 179 L.Ed.2d 557 (2011).
1. The Deficiency of Counsel’s Performance
Strickland and, numerous subsequent Supreme Court cases hold that defense counsel is under a duty to investigate their client’s case. Strickland, 466 U.S. 668, 690-91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Porter v. McCollum, 558 U.S. 30, 39, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009); Rompilla v. Beard, 545 U.S. 374, 380-90, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005); Wiggins v. Smith, 539 U.S. 510, 522-25, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); Williams v. Taylor, 529 U.S. 362, 396, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); Burger v. Kemp, 483 U.S. 776, 794, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987); Kimmelman v. Morrison, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Strickland explained how a court should analyze counsel’s performance of that duty in light of the deference á court must pay to defense counsel’s professional judgment:
[Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchai-lengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not.to investigate must he directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel’s judgments.
Id., 466 U.S. at 690-91, 104 S.Ct. 2052 (emphasis added).
Throughout the three decades following Strickland, the Supreme Court has steadfastly applied the rule that a decision not to investigate “must be directly assessed for reasonableness in all the circumstances,” giving more definite shape to that general rule. Id. at 691, 104 S.Ct. 2052. In Wiggins, for example, the Court could find no reasonable justification for defense counsel’s choice to limit their mitigation investigation to the pre-sentence investigation report and records from the Baltimore City Department of Social Services regarding the defendant’s time in foster care. 539 U.S. at 524, 123 S.Ct. 2527. The Court observed that counsel in that case “uncovered no evidence in their investigation to suggest that a mitigation case, in its own right, would have been counterproductive, or that further investigation would have been fruitless.” Id. at 525, 123 S.Ct. 2527. The lack of a sound reason to limit the investigation, the Court held, distinguished the case from earlier precedents finding “limited investigations into mitigating evidence to be reasonable.”[1] Id. The Court rejected the *467 position taken by the Maryland Court of Appeals “that because counsel had some information with respect to petitioner’s background ... they were in a position to make a tactical choice not to present a mitigation defense.” Id. at 527, 123 S.Ct. 2527 (emphasis in original). The Court held that “a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.” Id. Because the preceding investigation had been inadequate “the [state] court’s subsequent deference to counsel’s strategic decision not ‘to present every conceivable mitigation defense’ ... was also objectively unreasonable.” Id. at 528, 123 S.Ct. 2527.
The Supreme Court has held that decisions to limit investigations may be found reasonable where initial investigation suggests that pursuing a particular avenue of investigation will be fruitless, see Strickland, 466 U.S. at 699, 104 S.Ct. 2052; Rompilla, 545 U.S. at 383, 125 S.Ct. 2456 (room for debate about obligation to investigate the defendant’s childhood when interviews of both family and the defendant failed to reveal some of the particular traumas the defendant suffered), or that presenting a certain type of evidence would be counterproductive, Burger, 483 U.S. at 794, 107 S.Ct. 3114; Darden, 477 U.S. at 186, 106 S.Ct. 2464.
Conversely, under Supreme Court precedent, a decision to limit investigation unsupported by any strategic consideration is unreasonable. Wiggins, 539 U.S. at 526, 123 S.Ct. 2527 (“The record of the actual sentencing proceedings underscores the unreasonableness of counsel’s conduct by suggesting that their failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment.”); Rompilla, 545 U.S. at 385, 125 S.Ct. 2456 (“With every effort to view the facts as a defense lawyer would have done at the time, it is difficult to see how counsel could have failed to realize that without examining the readily available file they were seriously compromising their opportunity to respond to a case for aggravation.”); Kimmelman, 477 U.S. at 384, 106 S.Ct. 2574 (“Counsel’s failure to request discovery ... was not based on ‘strategy[1] ”).
The Supreme Court has also applied the rule that any strategic choice “made after less than complete investigation [is] reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation,” Strickland, 466 U.S. at 691, 104 S.Ct. 2052 at least twice rejecting an alleged “tactical” choice to focus on an alternative theory where it found that the theory was prematurely adopted. Williams, 529 U.S. at 396, 120 S.Ct. 1495 (decision to focus on voluntary confession was not adequate strategy because counsel had “not fulfilled] their obligation to conduct a thorough investigation of the defendant’s background” for the mitigation case); Rompilla, 545 U.S. at 388-89, 125 S.Ct. 2456 (rejecting the position of the state postconviction courts that “defense counsel’s efforts to find mitigat *468 ing evidence by other means excused them from looking at the prior conviction file.”)-
One final element of Supreme Court jurisprudence on ineffective assistance of counsel claims bears particular emphasis, as it has been entirely ignored in this case both by the Ohio courts and by the majority opinion. Namely, in Strickland the Supreme Court instructed that counsel’s role in the “adversarial process” must serve as the benchmark for assessing the adequacy of counsel’s performance. 466 U.S. at 686, 104 S.Ct. 2052 (“[t]he benchmark for judging any claim of ineffectiveness must be whether counsel’s conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.”); see also id. at 690, 104 S.Ct. 2052 (“[Counsel’s function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular ease.”) In Kimmelman, the Court reiterated this instruction, writing that the adversarial process “generally will not function properly unless defense counsel has done some investigation into the prosecution’s case and into various defense strategies.” 477 U.S. at 384, 106 S.Ct. 2574. In that case, defense counsel conducted no pre-trial discovery, and as a result failed to file a timely suppression motion because he was unaware of the evidence found in an unconstitutional search and seizure. Applying the principle set out above, the Supreme Court held that defense counsel’s performance was unconstitutionally deficient because the attorney’s “complete lack of pretrial preparation put[ ] at risk both the defendant’s right to an ample opportunity to meet the case of the prosecution and the reliability of the adversarial testing process.” Id. at 385, 106 S.Ct. 2574 (citations omitted).
Analyzed in light of the clear guidance from Supreme Court precedent, the decision of the Ohio Court of Appeals in the instant case is, in my judgment, glaringly unreasonable. The state appellate court concluded that Petitioner’s trial attorney did 'not provide constitutionally deficient counsel because his decision to “not investigate outside of the evidence contained in [the State’s discovery] filings” was reasonable “in light of all the evidence provided by the State during discovery.” State v. Jackson, 2009 WL 3720578 at *5, 2009-Ohio-5906 at ¶14 (Ohio Ct.App.2009) (‘‘Jackson /”). The court explained that “[b]ased upon that evidence, trial counsel developed a theory of defense predicated upon Jackson’s desire to commit suicide and his alleged mental defect,” then cited the principle that “[ajfter counsel chooses an adequate theory of defense, there is no duty to prepare for alternative theories” to explain that the performance of Petitioner’s counsel was not constitutionally deficient. Id.
The contention that defense counsel could reasonably decide not to investigate at all the circumstances of the crime because of the volume of discovery is difficult if not impossible to square with Strickland’s holding that the benchmark for any claim of ineffectiveness is whether defense counsel fulfilled its function “to make the adversarial testing process work in the particular case.!’ 466 U.S. at 690, 104 S.Ct. 2052. Indeed, the state appellate court’s reasoning in effect eliminates the duty to investigate altogether upon the state’s production of minimally voluminous discovery. It is difficult to believe that any fairminded jurist could regard such reasoning as consistent with Strickland and its progeny. Indeed, if directly adopted, such a rule would be altogether contrary to the Supreme Court precedent relying on the proposition that “[the adversarial] testing process generally will not function properly unless defense counsel has done some investigation into the prose *469 cution’s case and into various defense strategies.” Kimmelman, 477 U.S. at 384, 106 S.Ct. 2574.
Certainly, such an interpretation of Strickland cannot be reasonably argued on the facts of this case, where the state’s disclosures did not yield answers to the central questions relevant to Petitioner’s criminal liability, such as how the shooting occurred, and what was the nature of Petitioner’s intent. As the Supreme Court has directly held, the “quantum of evidence,” such as the number of reports and statements in the discovery file, is not disposi-tive. Instead, courts must also ask “whether the known evidence would lead a reasonable attorney to investigate further.” Wiggins, 539 U.S. at 527, 123 S.Ct. 2527. In this case, I cannot perceive any reasonable argument that the evidence known to defense counsel — that Petitioner could only remember intending to kill himself, that no witness identified by the prosecution saw the shooting occur, and that the shooting occurred in broad daylight in the parking lot of an operating nursing home — could have led a reasonable attorney to conclude that further investigation would be fruitless. See Wiggins, 539 U.S. at 527, 123 S.Ct. 2527; Rompilla, 545 U.S. at 383, 125 S.Ct. 2456.
Nor did the Ohio Court of Appeals identify any strategic consideration that could have led trial counsel to limit his investigation as a tactical matter. Compare Jackson I, at *5 with Wiggins, 539 U.S. at 526, 123 S.Ct. 2527 (counsel’s conduct was unreasonable because the “failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment”); Kimmelman, 477 U.S. at 384, 106 S.Ct. 2574 (“Counsel’s failure to request discovery ... was not based on ‘strategy’ ”). While the Supreme Court has held that “reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste,” Rompilla, 545 U.S. at 383, 125 S.Ct. 2456 (emphasis added), here it appears that defense counsel conducted absolutely no due diligence to assess the thoroughness of the prosecution’s investigation, and his affidavit states quite explicitly that he took no action to search for any additional witnesses.
Although I would not reduce the Supreme Court’s cases finding violations of the duty to investigate, as the majority opinion does, to cases where defense counsel essentially conducted no investigation at all and cases where defense counsel neglected apparent leads, this case fits squarely under both lines of authority. Defense counsel conducted no meaningful investigation into the circumstances of the crime, and his failure to investigate was all the more flagrant in light of the readily apparent possibility that additional witnesses might be found at the nursing home.
Defense counsel’s only investigation into the circumstances of the crime itself was comprised of interviewing his client, who “had no recollection of the actual shooting.” (R. 9-2, Holtschulte Affidavit, Page ID# 353.) Indeed, Petitioner testified at trial that he intended to kill himself that day, that he went to see his mother to say goodbye, and that he never intended to shoot his mother. Counsel apparently made no effort to interview the witnesses who were identified in the prosecution’s disclosures, an omission that is significant under Supreme Court precedent. Burger v. Kemp, 483 U.S. 776, 794-95, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) (holding that limited mitigation investigation was reasonable when counsel interviewed all witnesses brought to his attention, and reasonably determined that focusing on his client’s personal history would be detrimental); see also Porter v. McCollum, 558 *470 U.S. 30, 39-40, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009) (counsel was deficient for failing to “even take the first step of interviewing witnesses or requesting records.”)-
As to leads, in this case a potential source of witnesses was obvious: the shooting occurred in full daylight in the parking lot of an operating nursing home. Even with every effort to avoid the effects of hindsight and to account for the generality of the Strickland standard, I cannot understand how defense counsel could have failed to perceive that additional investigation may well have revealed further witnesses among the employees, residents, or visitors to the nursing home. It seems to me that fairminded jurists must agree that, particularly in light of the unresolved questions about the shooting, “any reasonably competent attorney would have realized that pursuing these leads was necessary to making an informed choice among possible defenses.” Wiggins, 539 U.S. at 525, 123 S.Ct. 2527.
In sum, Petitioner’s trial counsel failed to conduct any meaningful investigation of the crime with which Petitioner was charged, although the known evidence revealed significant and unresolved questions about Petitioner’s actions and intent. The argument that defense counsel’s review of the discovery files satisfied his duty to investigate the shooting is flatly inconsistent with the core holdings of Strickland and its progeny: that counsel’s function is to enable the adversarial process to function effectively, Kimmelman, 477 U.S. at 384-85, 106 S.Ct. 2574; Strickland, 466 U.S. at 686, 690, 104 S.Ct. 2052; that a decision to limit investigation must be supported by reasonable professional judgment, Kimmelman, 477 U.S. at 384, 106 S.Ct. 2574; Rompilla, 545 U.S. at 385, 125 S.Ct. 2456; Wiggins, 539 U.S. at 526, 123 S.Ct. 2527; and that the quantum of evidence is not dispositive where known evidence would lead a reasonable attorney to investigate further, Wiggins, 539 U.S. at 527, 123 S.Ct. 2527.
2. Prejudice Suffered by Petitioner
Neither the Warden nor the Ohio Court of Appeals challenge the proposition that Petitioner’s counsel would have very likely found Chaffin had he chosen to investigate further. Indeed, it would be impossible to seriously contest the likelihood that she would have been identified. The most basic steps to test the prosecution’s investigation or search for additional witnesses would have started with an inquiry of who was working at the nursing home that day. Such an inquiry would have revealed Kaci Chaffin’s name, and by simple cross reference trial counsel could have determined that she was not among the witnesses identified or interviewed by law enforcement. Additionally, had trial counsel or a defense investigator interviewed any of the nursing home employees who were named in the state’s disclosures, trial counsel would likely have learned from them that Chaffin was working at the nursing home that day.
I do not believe that fairminded jurists could disagree that had Chaffin testified at trial there is a “reasonable probability that ... the result of the proceeding would have been different.” See Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Ohio Court of Appeals held that Petitioner was not prejudiced by defense counsel’s failure to discover Chaffin for two reasons: first, because it believed Chaffin’s story raised serious credibility questions, and second, because it believed “the evidence at trial overwhelmingly supported the conclusion that Jackson purposefully killed his mother.” Jackson I, at *7.
Strickland held that to show prejudice warranting reversal of a conviction, “[t]he *471 defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” 466 U.S. at 694, 104 S.Ct. 2052. Where, as here, the defendant challenges a conviction, “the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.” Id. at 695, 104 S.Ct. 2052. A court must consider the totality of the evidence in making this determination. ■ Id. “[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.” Id. at 696, 104 S.Ct. 2052.
Unquestionably, Chaffin’s testimony would have constituted significant exculpatory evidence. At trial, she would have been the only witness who saw the actual shooting. Her testimony that she saw Petitioner pointing the gun at his own head and his mother struggling to take it from him when the gun discharged would have provided compelling and direct evidence that the shooting was an accident, going directly to the heart of the ease. Moreover, her testimony would have corroborated the evidence put forward by defense regarding Petitioner’s suicidal intent.
The Ohio Court of Appeals’ conclusion that Petitioner was not prejudiced by his attorney’s failure to present Chaffin’s testimony at trial was unreasonable. First, the court unreasonably discounted her testimony, citing credibility concerns that are simply insufficient to justify a conclusion that-her testimony could not have, under a reasonable probability standard, raised a “reasonable , doubt respecting guilt” if presented at trial.[2] See Strickland, 466 U.S. at 695, 104 S.Ct. 2052. The court believed that because Petitioner’s wife was Chaf-fin’s “co-worker and childhood babysitter,” their relationship “raised credibility issues.” Jackson I, at *6. Chaffin’s affidavit stated that she was “casually acquainted with Petitioner’s wife” “because she sometimes babysat [Chaffin] as a-child” and explains that before their chance encounter, she had not seen Petitioner’s wife “in at least eight years.”[3] (R. 9-1, Chaffin Affidavit, PagelD# 186.) This is hardly the sort of intimate relationship that could support credibility concerns sufficient grave to entirely discount Chaffin’s testimony. Moreover, Chaffin was also a coworker of Petitioner’s mother, muddying the water regarding the loyalties that a jury might justly impute to her in this case. (R. 9-1 at 185.)
The Ohio Court of Appeals also believed that Chaffin’s stated reason for not coming forward sooner — which was that she “was not aware that anything [she] saw was significant to the police investigation”— raised “serious credibility issues.”[4] Jackson I, at *6. Again, these concerns are simply not grave enough to conclude that there is no reasonable probability that a jury could have believed her testimony that the shooting was accidental. Chaf-fin’s affidavit explains that after she witnessed the shooting, she “went to the *472 bathroom to get sick” then called her grandfather, who picked her up from work, meaning that she would not have been present for the police investigation that afternoon. (R. 9-1 at 185.) She was eight-months pregnant at the time of the shooting. (Id.) She states that she was “never approached by the police or anyone else regarding the event.” (Id. at 186.) Moreover, in light of the time and place of the shooting, she could well have believed that others also witnessed the same events. Although a jury would be entitled to discount her story based on her failure to come forward earlier in the investigation, fairminded jurists could not reasonably dispute that the jury could also have found her story believable enough to raise serious doubt as to Petitioner’s intent. It was unreasonable for the Ohio Court of Appeals to “discount entirely the effect that [her] testimony might have had on the jury.” Porter, 558 U.S. at 43, 130 S.Ct. 447 (applying clearly established Supreme Court law).
Finally, contrary to the assertions of the Ohio Court of Appeals, no fairminded jurist could characterize the evidence against Petitioner as “overwhelming” — certainly not, in any event, as to the crucial element of intent that is thrown into question by Chaffin’s testimony. Two of the pieces of evidence of intent cited by the Ohio Court of Appeals rely on negative inference. First, the court pointed to the fact that Petitioner told the arresting deputy that he shot his mother, but did not tell the arresting deputy that the shooting was accidental. Jackson I, at *6. Petitioner, however, denied the statement altogether. Second, the court pointed to the fact that Petitioner’s mother told medical personnel that her son shot her, but did not mention it was accidental. Id. at *7. Her statements, however, were made in response to questioning by medical and law enforcement personnel, and the witness testifying to those statements described her as being in a state of shock and severe pain. The final piece-of evidence that the state appellate court identified was the testimony of another employee from the nursing home that she witnessed Petitioner and his mother arguing, and that she saw Petitioner “grabbing at” his mother, and his mother “trying to pull away.” Id. Although the fact that the two were arguing is consistent with an intentional shooting, I do not believe that any fairminded jurist could characterize it as “overwhelming” evidence that Petitioner purposefully shot his mother. Indeed, the evidence that they argued is also consistent with the possibility that Petitioner, who was already suicidal and in the midst of an emotional confrontation, attempted to shoot himself in front of his mother.
In short, Chaffin’s affidavit provides compelling evidence that the shooting underlying Petitioner’s conviction for aggravated murder was an accident. Fairmind-ed jurists could not disagree that had this evidence been submitted at trial, there is at least a reasonable probability that the trial would have resulted in a different outcome.
CONCLUSION
For the reasons stated above, I would reverse the judgment of the district court and remand with orders to conditionally grant Petitioner the habeas relief he seeks.

. The Court summarized the distinguishable precedent in the following string cite: "See, *467 e.g., Strickland, supra [at], 699, 466 U.S. 668 [104 S.Ct. 2052] (concluding that counsel could "reasonably surmise ... that character and psychological evidence would be of little help”); Burger v. Kemp, 483 U.S. 776, 794, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) (concluding counsel’s limited investigation was reasonable because he interviewed all witnesses brought to his attention, discovering little that was helpful and much that was harmful); Darden v. Wainwright, 477 U.S. 168, 186, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (concluding that counsel engaged in extensive preparation and that the decision to present a mitigation case would have resulted in the jury hearing evidence that petitioner had been convicted of violent crimes and spent much of his life in jail).” Id.

.In evaluating a Strickland claim based on the failure to present certain witness testimony, a state court’s determination that there is no prejudice because the witness is not credible is a mixed question of fact and law, and therefore is not entitled to the § 2254(e)(1) presumption. Ramonez v. Berghuis, 490 F.3d 482, 490-91 (6th Cir.2007).

. Inexplicably, the state court opinion omits the reference to the eight-year period from its quotation of the affidavit without any indication of editing. See Jackson I, at *4.

. Chaffin’s testimony was discovered for the first time approximately a year after the shooting and about four months after Petitioner was convicted at trial. (R. 9-1 at 185-86.)