# SUPREME COURT OF THE UNITED STATES

## KEVIN B. BURNS *v.* TONY MAYS, WARDEN

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 22–5891.   Decided April 24, 2023

The petition for a writ of certiorari is denied.

JUSTICE SOTOMAYOR, with whom JUSTICE KAGAN and JUSTICE JACKSON join, dissenting from the denial of certiorari.

Petitioner Kevin Burns, a defendant sentenced to death for felony murder, brought a 28 U. S. C. §2254 petition claiming inadequate assistance of counsel at the penalty phase of his trial. Burns asserts that counsel failed to present mitigating evidence tending to show that he did not shoot either of the two victims killed during a robbery in which he participated. Such evidence does not bear on Burns' guilt, since his participation in the underlying robbery suffices to render him guilty of felony murder. Evidence that Burns did not pull the trigger, however, was plainly relevant to the jury's determination whether to sentence him to death. The Sixth Circuit avoided this obvious conclusion only by mischaracterizing Burns' claim as being about counsel's failure to introduce residual doubt evidence (*i.e.*, evidence that Burns was not, in fact, guilty of felony murder). From there, the Sixth Circuit concluded that the claim must fail because this Court has never established a right to introduce residual doubt evidence at sentencing.

Burns argues, and the State does not contest, that the Sixth Circuit's analysis turned on two erroneous legal assumptions and clearly conflicts with several decisions of this Court. Burns asks this Court to take summary action to correct these fundamental legal errors so that his claim may be fairly considered before the State executes him. The

Court, however, declines to intervene.  I would summarily
vacate the error-laden (and precedential) decision below
and remand for further consideration of Burns' claim.  I re-
spectfully dissent from the Court's failure to do so.

   When Burns was 22 years old, he was part of a group of
six young men that confronted and robbed another group of
four young men sitting in a car.  During the conflict, shots
were fired into the car, killing two and severely injuring a
third.  No definitive narrative emerged regarding who had
shot the victims.  Prosecutors eventually charged three of
the six men, including Burns, with premeditated murder
and felony murder.  In separate trials, juries convicted
Burns' codefendants of felony murder only and sentenced
both to life in prison.  Burns' trial followed.

   The jury acquitted Burns of premeditated murder but
convicted him of two counts of felony murder, one for each
of the men killed.  To convict Burns of felony murder, the
jury had to find only that he participated in the robbery; the
jury did not need to decide who shot the victims.  See Tenn.
Code Ann. §§39–11–402(2), 39–13–202(a)(2) (1991).  Be-
cause his felony-murder convictions made him eligible for a
death sentence, §39–13–202(b), however, the jury had to de-
cide at the penalty phase of trial whether to sentence Burns
to death or life in prison.

   At the penalty phase, capital defendants have a right to
present any relevant mitigating evidence, including evi-
dence regarding the "'circumstances of the offense.'"  *Ed-
dings* v. *Oklahoma*, 455 U. S. 104, 110 (1982) (quoting *Lock-
ett* v. *Ohio*, 438 U. S. 586, 604 (1978) (plurality opinion)).
Such evidence may be particularly important for a defend-
ant facing death for felony murder, because a jury's penalty-
phase assessment of culpability will often turn on the de-
fendant's particular role and mental state during the of-
fense.  See *Tison* v. *Arizona*, 481 U. S. 137, 156–158 (1987).

   Here, the State argued, based on testimony from two eye-
witnesses, that Burns had shot Damond Dawson, one of the

two men killed. While the jury did not convict Burns of premeditated murder, this evidence was doubtless salient at the penalty phase. For it is self-evident that concerns that Burns killed someone would weigh heavily on the jurors' evaluation of what punishment was warranted. This is especially obvious here, as the only evidence in aggravation that the State introduced was related to the two deaths.

Yet penalty-phase counsel did nothing to challenge the State's narrative on this life-or-death question. This failure was particularly egregious, as Burns, in state postconviction proceedings, demonstrated that counsel could have done so by offering powerful impeachment evidence of the two eyewitnesses and introducing evidence that Burns did not shoot Dawson. One of the eyewitnesses was the person who was shot, but survived. He had earlier testified at the trial of one of the codefendants that it was the codefendant who shot both him and Dawson, saying nothing about Burns. When he instead identified Burns as the shooter at Burns' trial, counsel did not impeach him with his prior testimony, despite being aware of it. The other eyewitness, a neighbor, was prompted by defense counsel's cross-examination to make a courtroom identification of Burns based on his appearance and the Jheri curl hairstyle he had at the time of trial. Defense counsel could have, but did not, call witnesses to testify to a critical fact: While some of the six men had Jheri curls at the time of the crime, Burns, who had very short hair then, did not. Nor did counsel present testimony that Burns looked similar to (and had the same first name as) another member of the group of six, who was actually the one to instigate the conflict, with a key difference being that, unlike Burns, the instigator had a Jheri curl at the time of the crime. In fact, counsel failed to observe that police statements taken from members of the six indicated that it was this other man, and not Burns, who had initially approached the vehicle.

In case there was any doubt about the role the eyewitness

testimony played, the jury's decision should put it to rest. The jury sentenced Burns to death on the count connected to Dawson. It sentenced him to life in prison for the other count related to the victim he was not alleged to have shot. The Tennessee Court of Criminal Appeals (TCCA) affirmed the convictions and death sentence on appeal.

In his state postconviction petition, Burns asserted that his penalty-phase counsel was ineffective for the reasons above. In just one paragraph, the TCCA rejected the claim for lack of prejudice, concluding that Burns "cannot establish that his sentence would have been different." App. to Pet. for Cert. 197. The court reasoned there could be no prejudice because, even if Burns did not shoot Dawson, the record supported an alternative basis for the State's alleged *aggravating* factor "of creating a great risk of death to two or more persons." *Ibid.* That reasoning completely overlooks, however, that Burns had a right to introduce *mitigating* factors. Evidence that he did not shoot Dawson would have been vital in this regard.

Burns then raised his claim in a federal §2254 petition. Applying the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the District Court denied the claim after determining that the TCCA's prejudice determination was entitled to deference. *Id.,* at 114. The District Court, recognizing that reasonable jurists could disagree on this point, granted a certificate of appealability. *Id.,* at 154.

The Sixth Circuit affirmed. 31 F. 4th 497 (2022). Unlike the District Court, the Sixth Circuit did not rely on the TCCA's prejudice decision. Instead, the Sixth Circuit held that Burns' claim failed because he could not show that penalty-phase counsel acted deficiently in the first place.

The Sixth Circuit's deficiency analysis rested on two fundamental errors of law. The first occurred when the Sixth Circuit *sua sponte* recharacterized Burns' claim as being about nothing more than "'residual doubt'" evidence. *Id.,* at 503 (quoting *Oregon* v. *Guzek*, 546 U. S. 517, 525 (2006)).

That term refers to evidence that is "introduce[d] at sentencing" with the purpose of "cast[ing] 'residual doubt' on [the defendant's] guilt of the basic crime of conviction." *Id.*, at 525. The second occurred when the Sixth Circuit concluded that Burns' claim, so understood, "necessarily fails" because this Court has not established a "right to present residual doubt evidence at sentencing." 31 F. 4th, at 503.

The error in the Sixth Circuit's decision leaps off the page. Evidence that Burns did not shoot the victim is not, of course, mere residual doubt evidence. Because Burns was convicted of felony murder, the jury did not have to find that he shot anyone in order to convict him. Thus, evidence that he was not the shooter goes to the circumstances of the felony murder and his level of culpability, rather than guilt. In other words, such evidence concerns "*how*, not *whether*, [Burns] committed the crime," a typical focus of sentencing. *Guzek*, 546 U. S., at 524. This glaring mistake, confusing evidence about the circumstances of the offense with residual doubt evidence, deprived Burns of his last chance to defend his constitutional right to introduce mitigation evidence that could have spared his life. See *Eddings*, 455 U. S., at 110.

Further, even holding fixed the Sixth Circuit's erroneous "residual doubt" characterization, the decision below rests on yet another fundamental error. The Sixth Circuit reasoned that because this Court has not recognized a right to introduce residual doubt evidence at the penalty phase, the failure to do so could not be deficient performance under *Strickland* v. *Washington*, 466 U. S. 668 (1984). This reasoning assumes, incorrectly, that only failures to advance or protect federally recognized rights can be deficient. Because deficiency for purposes of *Strickland* is measured by "an objective standard of reasonableness," *id.*, at 688, federal ineffective-assistance-of-counsel claims can also be based on failures under state law. See, *e.g., Hinton* v. *Ala-*

*bama*, 571 U. S. 263, 275 (2014) (*per curiam*) (counsel's failure to "understand the resources that state law made available to him" was deficient); *Kimmelman* v. *Morrison*, 477 U. S. 365, 385 (1986) (counsel was deficient for failing to request discovery permitted under state law).

Because the Sixth Circuit overlooked this fact, it never considered whether Tennessee law might guarantee a right to introduce residual doubt evidence at the penalty phase. This is a critical omission because, as Burns made the Sixth Circuit aware, Tennessee allows for introduction of residual doubt evidence at sentencing and such a right was recognized at the time of his trial. See, *e.g., State* v. *Teague*, 897 S. W. 2d 248, 256 (1995) ("Evidence otherwise admissible under the pleadings and applicable rules of evidence, is not rendered inadmissible because it may show that the defendant did not kill the victim, so long as it is probative on the issue of the defendant's punishment").

In his petition for certiorari, Burns asks this Court for summary action to correct the serious legal errors below. The State, tellingly, does not defend the indefensible. Instead, essentially conceding that the Sixth Circuit erred, the State tries to shift attention away from the actual ruling on review by arguing that any action would be "futile" because, on remand, Burns "would not be able to overcome the heavy deference that must be paid to the state court's prejudice findings." Brief in Opposition 2.

Burns argued before the Sixth Circuit, however, that the TCCA itself committed two clear errors of law in its prejudice analysis, such that no AEDPA deference is owed under §2254(d)(1). First, Burns argued that because the TCCA considered only whether evidence that he did not shoot Dawson would have impacted the jury's finding of the statutory aggravating factor, without considering how it would have impacted the jury's assessment of mitigation, its decision is contrary to clearly established law, which also requires asking whether "the available *mitigating evidence,*

taken as a whole, 'might well have influenced the jury's appraisal' of [his] moral culpability." *Wiggins* v. *Smith*, 539 U. S. 510, 538 (2003) (emphasis added). Second, Burns argued that the TCCA applied an overly demanding prejudice standard, ignoring that prejudice requires only "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Rompilla* v. *Beard*, 545 U. S. 374, 390 (2005); Cf. *Vasquez* v. *Bradshaw*, 345 Fed. Appx. 104, 112 (CA6 2009) (no AEDPA deference owed because the state court "actually describe[d] and appl[ied] a different [prejudice] standard"). The Sixth Circuit never considered these arguments because of its erroneous deficiency analysis.

The Court's decision to deny certiorari means that Burns now faces execution despite a very robust possibility that he did not shoot Dawson but that the jurors, acting on incomplete information, sentenced him to death because they thought he had. The Court's failure to act is disheartening because this case reflects the kind of situation where the Court has previously found summary action appropriate: The relevant facts are not in dispute, and the decision below clearly conflicts with settled law of this Court on an important matter. The need for action is great because Burns faces the ultimate and irrevocable penalty of death. With so much at stake, I would vacate the decision below and remand. Because the Court refuses to do so, the indefensible decision below will be the last for Burns. I respectfully dissent.